# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
Annetria HILL et al., Plaintiffs,
v.
DILLARD'S INC., Defendant.
No. 00-2523-JWL.

Oct. 9, 2001.

MEMORANDUM AND ORDER

DAVID J. WAXSE, Magistrate Judge.
*1 Pending before the Court is Plaintiff's Motion to Compel (doc. 20). Plaintiffs move for an order compelling Defendant to fully respond to certain interrogatories and requests for production of documents. For the reasons stated below, Plaintiff's Motion is granted as specifically set forth herein.

Relevant Factual Background

On November 14, 2000, Plaintiffs filed a Complaint against Dillard's, Inc. seeking damages for false imprisonment, defamation, malicious prosecution, outrageous conduct and discrimination pursuant to 42 U.S.C. § 1981. More specifically, Plaintiffs allege that Dillard's, through its security officers, stopped and detained them on the basis of their race, black, while they were shopping. Plaintiff Annetria Hill ultimately was arrested for shoplifting after Dillard's reported the incident to the Overland Park, Kansas police department. The criminal shoplifting charges brought against Hill were later dismissed.

Discussion

The following discovery requests are at issue in Plaintiff's Motion:

Interrogatory 12 [FN1]

FN1. Interrogatory 13 is identical to Interrogatory 12 except it narrows the request to include only those cases turned over to the police department that involved Jack Clary or Greg K. Smith. Although Interrogatory 13 also is at issue in Plaintiff's Motion, it will not be discussed independently because the issues presented are subsumed by Interrogatory 12.

List all cases turned over to the Overland Park Police Department for prosecution of shoplifting by Dillard's for three (3) years prior to October 2, 1999, by identifying the person(s) involved in each case, the date of each case, and give a brief description of the allegations in each case.

Request 18

All files logs, records and reports regarding all shoplifting incidents at the Overland Park Dillard's store for three (3) years prior to October 2, 1999.

Request 19

All correspondence between Dillard's and CBS News or the 60 Minutes staff regarding a program that aired on March 5, 2001.

Defendant objects to the discovery set forth above on grounds that it is not relevant, it is overly broad with regard to temporal scope, and it is unduly burdensome to produce. In its response brief, Defendant also appears to raise a new objection to this discovery based on confidentiality concerns. The Court will address each of Defendant's objections in turn.

• *Relevance*

Prior to December 1, 2000, [FN2] a request for discovery would be considered relevant if there was "any possibility" that the information sought may be relevant to the subject matter to the action. *Scott v. Leavenworth Unified School Dist. No. 453,* 190 F.R.D.583, 585 (D.Kan.1999); *Etienne v. Wolverine Tube, Inc.,* 185 F.R.D. 653, 656 (D.Kan.1999). Thus, a request for discovery would be allowed "unless *it [was] clear* that the information sought [could] have *no possible bearing* on the subject matter of the action." *Scott,* 190 F.R.D. at 585 (quoting *Snowden*

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

*v. Connaught Lab., Inc.*, 137 F.R.D. 336, 341 (D.Kan.1991)) (emphasis added by *Scott* ).

> FN2. The post-December, 2000 version of Rule 26 governs this dispute, as the Scheduling Order in this case was issued after December 1, 2000. The conclusions reached by the Court here, however, would be the same regardless of whether the Court utilized the "old version" of Rule 26(b)(1), which defined the scope of discovery broadly to include any matter, not privileged, that was relevant to the "subject matter" of the litigation, or the "new version" of Rule 26(b)(1), which defines the scope more narrowly as unprivileged facts relevant to the claims and defenses raised in the litigation.

Given the scope of relevancy has been narrowed from "subject matter of the action" to "claim or defense of any party" by the recent amendments to Rule 26, and based on the relevant case law in this jurisdiction regarding relevancy, *supra*, it appears logical to conclude that a request for discovery will be considered relevant under the amended rule if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See Scott*, 190 F.R.D. at 585; *Etienne*, 185 F.R.D. at 656. Thus, under the amended rule, a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of any party. *See id.* [FN3]

> FN3. Although dealing with the scope of discovery in an employment discrimination context, it is a well-established rule of law that discovery in discrimination cases should not be narrowly circumscribed. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343-44 (10th Cir.1975). The scope of discovery is particularly broad in discrimination cases and "an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment." *Gomez v. Martin Marietta Corp.*, 50 F .3d 1511, 1520 (10th Cir.1995) (citing *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir.1991)). "As a general rule, the testimony of other[s] about their treatment by the defendant is relevant to the issue of ... discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir.1990).

A plaintiff may be allowed "extensive" discovery in order to prove his or her case. *Rich v. Martin Marietta Corp.*, 522 F.2d at 343.

*2 When the discovery sought appears relevant as defined by the amended rule, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under amended Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Scott*, 190 F.R.D. at 585 (citations omitted). Similarly, a party resisting discovery on the grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. at 656; *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D.Kan.1997). When the relevancy of propounded discovery is not apparent, however, its proponent has the burden to show the discovery relevant. *Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, 309 (D.Kan.1996).

### a. Interrogatory 12

Plaintiffs claim disparate treatment on the basis of race with regard to the allegations of shoplifting made against them. Plaintiffs further allege that Dillard's has a pattern and practice of discriminating against African-American shoppers. Plaintiff's Complaint at ¶¶ 49-57. As part of their claim, Plaintiffs maintain Defendant "turned over" Plaintiff Annetria Hill's case to the Overland Park Police Department for prosecution with regard to the shoplifting allegations at issue.

The interrogatory at issue requests identification of other cases "turned over" to the Overland Park Police Department for prosecution with regard to shoplifting allegations. Plaintiffs assert they need this information to support their claim that blacks and non-blacks are treated differently with regard to detention and prosecution of shoplifting incidents. [FN4] Based on these circumstances, the Court finds Interrogatory 12 appears relevant and/or reasonably calculated to lead to the discovery of admissible evidence with respect to Plaintiffs' claims.

> FN4. Contrary to Defendant's assertions, Plaintiffs do not have to first "establish

Case 1:06-mc-00007-KAJ    Document 6-2    Filed 01/24/2006    Page 4 of 11

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

[their] claim of discrimination" as a matter of law before earning the right to discover information and documents relevant to the alleged discriminatory conduct.

### b. Request 18

Defendant apparently maintained a security incident log during the relevant time period regarding all occurrences involving its security personnel. Request 18 seeks production of the security incident logs for the three years prior to the date of the alleged shoplifting incident involving Plaintiffs. Plaintiffs assert they need this information to support their claim that blacks and non-blacks are treated differently with regard to reported incidents and subsequent detention and prosecution of such incidents.

Defendant does not dispute that the alleged shoplifting incident involving Plaintiffs was recorded in a security log. Defendant objects to producing the log on grounds of relevance, however, because (1) the logs do not reflect an individual's race; and (2) Plaintiffs seek the logs so that she can improperly formulate her own statistics regarding the frequency for which Dillard's stops African-American shoppers as opposed to Caucasian shoppers.

*3 The Court disagrees with Defendant's contention that the logs are not relevant just because they do not contain information regarding the race of individuals involved in store incidents or because Plaintiff could formulate statistics from the log that ultimately would not be admissible at trial. Regarding the scope of discovery allowed, the federal rules specifically provide that "[r]elevant information need not be admissible at the trial *if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.*" Fed.R.Civ.P. 26(b)(1) (emphasis added). In reviewing a sample of an incident log, attached as an exhibit to Plaintiff's Reply brief (doc. 31), the Court finds that although the log-or statistics calculated from information in the log-may not be admissible at trial to support a claim of disparate treatment on the basis of race, the log itself certainly appears reasonably calculated to lead to the discovery of admissible evidence. [FN5]

> FN5. For example, Plaintiffs may be able to determine the race of the individuals listed in the incident log through further investigation based on the information found in the log.

Based on these circumstances, the Court finds Interrogatory 12 appears relevant and/or reasonably calculated to lead to the discovery of admissible evidence with respect to Plaintiffs' claims.

### c. Request 19

Request 19 seeks all correspondence between Dillard's and CBS News or the 60 Minutes staff regarding a program that aired on March 5, 2001 reporting on the relationship between race and the security practices of various retail stores. In support of their request, Plaintiffs allege that

[a] good portion of the story focused on incidents of security discrimination at the Oak Park Mall Dillard's. Although Dillard's declined 60 Minutes' request for an interview, the stories investigator and narrator, Ed Bradley, specifically identified a written statement sent to 60 Minutes from Dillard's regarding the issue of alleged discriminatory security practices at Dillard's stores. Mr. Bradley quoted a portion of Dillard's statement in the program as follows: "State laws permit a retail store to stop a person for investigation without proof beyond a reasonable doubt. Nevertheless, Dillard's realizes that honest mistakes can and do happen. For those rare occasions, Dillard's apologizes and routinely offers gif [sic] certificates to demonstrate our sensitivity to this problem." The entire 60 Minutes story dealt with incidents similar to those alleged in plaintiffs' Complaint.

Plaintiffs' Motion to Compel at pp. 3-4 (doc. 20). Defendant objects to producing the information, asserting "statement made to the media nearly three years after plaintiff's alleged incident at Dillard's ... can have no bearing on plaintiff's [sic] claims." Defendant's Suggestions at p. 5 (doc. 28).

For the reasons set forth in subsections (a) and (b), *supra,* the Court finds Request 19 appears relevant and/or reasonably calculated to lead to the discovery of admissible evidence with respect to Plaintiffs' claims.

### • Temporal Scope

Defendant argues Interrogatory 12 and Request 18 are overly broad in time because they seek information and/or documents for a period of three years prior to the alleged shoplifting incident. While the Court has been unable to locate any case law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 4
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

addressing the issue of temporal scope in the context of the discriminatory treatment of customers, the case law on this issue in the context of an employment discrimination cause of action would appear to be applicable. Employment discrimination cases have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period. *See, e.g., James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir.1979) (four years prior to liability period reasonable); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D.Minn.1997) (allowing discovery into the period two years after termination); *Lyoch v. Anheuser-Busch Co.*, 164 F.R.D. 62, 67 (E.D.Mo.1995) (four years prior to liability period reasonable); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D.Pa.1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 62-63 (D.N.J.1985) (allowing discovery for a period of two years after employment terminated); *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53-62 (E.D.Pa 1979) (five years prior to liability period reasonable); *Cormier v. PPG Indus.*, 452 F.Supp. 594 (W.D.La.1978) (five years prior to liability period reasonable); *Stevenson v. General Electric Co.*, No. C-1-77-122, 1978 WL 150, at *1 (S.D.Ohio Oct. 4, 1978) (noting emergence of a "five-year rule"); *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D.Pa.1977) (approximately five years prior to alleged violation).

*4 Keeping in mind that the scope, including the temporal scope, of discovery through interrogatories and requests for production of documents is particularly broad in discrimination cases, the Court is convinced that limiting the scope of Interrogatory 12 to a period of three years prior to the time the discriminatory conduct was alleged to have occurred is reasonable and not overly broad.

• Undue Burden

As the party resisting discovery, Defendant has the burden to show facts justifying its objections. *See Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D.Kan.1991). In lodging an objection based on burden, those resisting discovery must demonstrate that the time or expense involved in responding to requested discovery is unduly burdensome. Moreover, the party resisting discovery has the obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure which would be required to produce the requested documents. This information is necessary to enable the Court to determine the burden imposed by the discovery.

Defendants have submitted no explanation, let alone an affidavit or other proof, demonstrating that responding to these Interrogatories would impose an undue burden. The Court will not speculate that the requested discovery causes undue burden; therefore, Defendant's objection with regard to undue burden will be overruled.

• *Confidentiality*

In its brief, Defendant appears to rely on the confidential nature of the information as grounds for refusing to produce it. Confidentiality does not equate to privilege. *Folsom v. Heartland Bank*, No. Civ. A. 98-2308-GTV, 1999 WL 322691, *2 (May 14, 1999) (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)). Although information is not shielded from discovery on the sole basis that the information is confidential, a party may request the court enter a protective order pursuant to Fed.R.Civ.P. 26(c) as a means to protect such confidential information. While the decision whether to enter a protective order is within the Court's discretion, *see Thomas v. International Bus. Mach.*, 48 F.3d 478, 482 (10th Cir.1995), Rule 26(c) nevertheless requires that the party seeking the protective order provide "good cause" for the order. Specifically, Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense." The party seeking a protective order has the burden to demonstrate good cause. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan.1996).

In determining whether good cause exists to issue a protective order that prohibits partial or complete dissemination of documents or other materials obtained in discovery, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and very serious injury.' " *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D.Kan.1995) (quoting *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 480 (S.D.N.Y.1982)) (internal quotations omitted). The moving party must also make "a particular and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981).

*5 Defendant has not yet requested a protective order permitting Defendant to withhold the discovery at issue in the event the Court grants Plaintiffs' Motion to Compel. Without such a request, the Court is not in a position to determine whether the requisite good cause exists to issue a protective order prohibiting dissemination of the information requested under Fed.R.Civ.P. 26(c). The Court does, however, recognize there may be confidentiality concerns with respect to the documents and information requested based on the privacy interests of non-parties. Accordingly, and in the interest of justice, the Court will direct the parties to submit an agreed protective order protecting the confidentiality of the documents at issue within five (5) days from the date of the filing of this Order. Defendant shall then provide the information requested within five (5) days after entry of the protective order. If the parties are unable to agree upon such a protective order, the Court will allow Defendant five (5) days from the date of the filing of this Order to move for a protective order protecting the confidentiality of the information upon disclosure. Plaintiff shall have five (5) days thereafter to respond. If neither an agreed-upon protective order nor a motion for protective order is filed within the time period specified, disclosure will be required without the protection of any such order.

*Conclusion*

Based on the discussion above, Plaintiff's Motion is hereby granted with the provision that the parties shall submit an agreed protective order protecting the confidentiality of the information and documents at issue within five (5) days from the date of the filing of this Order and Defendants shall then provide the information and documents within five (5) days after entry of the protective order. If the parties are unable to agree upon such a protective order, the Court will allow Defendants five (5) days from the date of the filing of this Order to move for a protective order protecting the confidentiality of the information and documents at issue and Plaintiff shall have five (5) days thereafter to respond. If neither an agreed-upon protective order nor a motion for protective order is filed within the time period specified, disclosure will be required without the protection of any such order.

IT IS SO ORDERED.

D.Kan.,2001.  
Hill v. Dillard's Inc.  
Not Reported in F.Supp.2d, 2001 WL 1718367 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2:00cv02523 (Docket) (Nov. 14, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 291534 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

C
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Michael BRAUTIGAM, Plaintiff,
v.
William PRIEST, Jr.; Richard W. Watt; Martin M. Torino; Jonathan L. Lubell; Enrique R. Arzac; James J. Cattano; Credit Suisse Asset Management, f/k/a BEA Associates, Inc.; and the Portugal Fund, Inc., Defendants.
No. 99-365-SLR.

March 2, 2000.

Joseph A. Rosenthal, and Carmella P. Keener, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, Richard B. Brualdi, of Law Offices of Richard B. Brualdi, New York, New York, for Plaintiff, of counsel.
Martin P. Tully, and Jon E. Abramczyk, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Lawrence O. Kamin, and Albert M. Myers III, of Wilkie, Farr & Gallagher, New York, New York. Jack C. Auspitz, and Lev Dassin, of Morrison & Foerster LLP, New York, New York, for defendants, of counsel.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court is a motion to dismiss filed by defendants William Priest, Jr., Richard W. Watt, Martin M. Torino, Jonathan L. Lubell, Enrique R. Arzac, James J. Cattano, Credit Suisse Asset Management (formerly known as BEA Associates, Inc.), and the Portugal Fund, Inc. (D.I.17) The individual defendants are all directors of the Fund. Credit Suisse Asset Management ("Credit Suisse") is the Fund's investment advisor. Claims one and two of plaintiff Michael Brautigam's complaint arise under §§ 36(a) and 48 of the Investment Company Act of 1940 ("the ICA"), 15 U.S.C. §§ 80a-35(a), -47 (D.I. 1 ¶¶ 37-45). Claims three and four allege violations of Maryland common law and the Maryland General Corporations Law, respectively. In their motion to dismiss, defendants assert lack of personal jurisdiction and improper venue. (D.I.17) At issue, then, is whether the court has personal jurisdiction over defendants and, if so, whether the District of Delaware is the appropriate venue for this action. For the following reasons, the court shall answer the first question in the affirmative and the second in the negative. Because Delaware is not the appropriate venue for this action, the court shall transfer this case to the Southern District of New York.

II. BACKGROUND

The only pertinent facts are those relating to jurisdiction and venue. Plaintiff brings this action, purportedly on behalf of a class, against the Fund, its directors, and Credit Suisse for breaches of fiduciary duties imposed by §§ 36(a) and 48 of the ICA and by Maryland law. Plaintiff founds personal jurisdiction and venue on the fact that the Fund and the Fund's investment advisor (then known as BEA Associates, Inc.) "have promulgated SEC filings stating that their principal business offices are in this district." (D.I. 1 ¶ 5) Plaintiff further states that, "[s]ince the Fund maintains its principal place of business in this district, a substantial part of the property that is the subject of this action, and a substantial part of the conduct complained of herein, occurred in this [d]istrict." (D.I. 1 ¶ 5) As a basis for the court's jurisdiction and venue, plaintiff points to three of the Fund's electronic filings with the SEC that list a business address as "c/o BEA Associates, Inc., 103 Bellevue Parkway, Wilmington, De." (D.I.25, Exs.1-3)

In support of their motion to dismiss, defendants submit the affidavit of Michael Pignataro (D.I.19), who is Chief Financial Officer and Secretary of the Fund and an officer of Credit Suisse. Pignataro avers that neither the Fund nor Credit Suisse was ever located in Delaware or transacted business there. [FN1] (D.I. 19 ¶ 5) Moreover, none of the individual defendants reside, or transact business, in Delaware. (D.I. 20 ¶ 7) Pignataro explains that the Wilmington address on the Fund's SEC filing appeared by mistake, "and only in an electronic data field associated with certain documents filed electronically by the Fund on a routine basis." [FN2] (D.I. 19 ¶ 6) This Wilmington address was never listed on any documents sent to Fund shareholders. (D.I. 19 ¶¶ 8, 9) In fact, plaintiff's own exhibits reveal that the Fund listed New York, New York as its place of business

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 2
Not Reported in F.Supp.2d, 2000 WL 291534 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

in (1) a letter to Fund shareholders, (2) a May 12, 1999 press release, and (3) a proxy statement for a May 11, 1999 shareholders meeting. (D.I. 25, Ex. 1 at 2; Ex. 2 at 2; Ex. 3 at 2) Documents provided by defendants list BEA Associates' address (and later Credit Suisse's) as New York, New York. (D.I. 19 at Exs. B-I)

> FN1. Pignataro explains that, prior to July 2, 1999, Credit Suisse was a New York general partnership with its principal place of business in New York, New York. (D.I. 19 ¶ 2) Since then, Credit Suisse converted from a New York general partnership to a Delaware Limited Liability Company. (D.I. 19 ¶ 5)

> FN2. According to Pignataro,
> [t]his anomaly arose when electronic filings were first authorized by the SEC some time in the mid-1990s. To obtain a filing code which would permit regular filings by electronic means, the Fund's then-administrator-PFPC, Inc.-apparently filled out a form which incorrectly listed its own address, rather than the Fund's, in the address field. The subsequent use of the filing code thus obtained apparently caused this same incorrect information to be refiled in an electronic file known as a "header," which could be accessed separately in the SEC's EDGAR database, but was not apparent to the casual viewer of the filing itself.
> (D.I. 19 ¶ 7)

### III. DISCUSSION

*2 Before a court may hear a case, it must have both personal jurisdiction over the defendants and be satisfied that its venue is appropriate. See *FS Photo, Inc. v. Picturevision, Inc.,* 48 F.Supp.2d 442, 444 (D.Del.1999). Defendants argue that the court lacks personal jurisdiction over them and, even if it had personal jurisdiction, venue is improper in Delaware because none of the defendants reside or transact business in Delaware and none of the events giving rise to the complaint occurred here.

### A. Personal Jurisdiction

When a defendant raises a defense of lack of personal jurisdiction, the plaintiff bears the burden of coming forward with sufficient facts to establish that jurisdiction is proper. See *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). The plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir.1984). For the purposes of the motion, the court must accept as true the plaintiff's version of the facts and draw all inferences from the pleadings, affidavits, and exhibits in the plaintiff's favor. See *DiMark Mktg., Inc. v. Louisiana Health Serv. & Indem. Co.,* 913 F.Supp. 402, 405 (E.D.Pa.1996).

Section 44 of the ICA provides for nationwide service of process. See 15 U.S.C. § 80a-43. Specifically, the ICA states that, "process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found." *Id.* Thus, as with an analogous provision in the Securities and Exchange Act of 1934, the court has personal jurisdiction over the defendants so long as they have minimum contacts with the United States. See *FS Photo,* 48 F.Supp.2d at 445. Due Process concerns under the Fifth Amendment are satisfied if a federal statute provides for nationwide service of process in a federal question case. See *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295 (3d Cir.1985).

It is undisputed that all of the defendants have minimum contacts with the United States. Therefore, the court has personal jurisdiction over defendants with respect to plaintiff's federal claim. The court also has pendent personal jurisdiction over defendants for plaintiff's state law claims. See *FS Photo,* 48 F.Supp.2d at 445 (exercising personal jurisdiction over plaintiff's pendent state common law claims where court had personal jurisdiction under Securities Act of 1934).

### B. Venue

Although the court has personal jurisdiction over defendants, it still must decide whether the District of Delaware is the appropriate venue for this action. When venue is attacked, plaintiff bears the burden of proving proper venue. See *Dinterman v. Nationwide Mut. Ins. Co.,* 26 F.Supp.2d 747, 749 (E.D.Pa.1998). Two venue statutes govern this inquiry. The first is § 44 of the ICA. That section provides, in pertinent part, as follows:

*3 A criminal proceeding based upon a violation of

Case 1:06-mc-00007-KAJ    Document 6-2    Filed 01/24/2006    Page 10 of 11

Not Reported in F.Supp.2d                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 291534 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

section 34, or upon a failure to file a report or other document required to be filed under this title, may be brought in the district wherein the defendant is an inhabitant or maintains his principal office or place of business. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this title or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business....

15 U.S.C. § 80a-43 (emphasis added). Thus, for venue to be appropriate under the ICA plaintiff must demonstrate either that the defendants reside in Delaware, or have their principal place of business here, or transact business in Delaware.

As noted, plaintiff alleges that the Fund is a resident of, and transacts business in, Delaware. There is precious little substance to this allegation. As an initial matter, the Fund is a Maryland corporation. The Fund's communications with its shareholders and the public demonstrate that neither the Fund nor its investment advisor was ever listed as a Delaware resident. The Delaware address given for BEA Associates in the electronic SEC database appears to have been a mistake since none of the Fund's public documents list BEA's address as Delaware. In fact, the Fund's semi-annual and annual shareholder reports list the address of BEA Associates (and later Credit Suisse) as New York, New York. FN3 (D.I. 19 at Exs. B-I) Moreover, the complaint does not allege that any of the individual defendants live in Delaware or transact business here.

> FN3. As noted, Credit Suisse is now a Delaware Limited Liability Company. As such, venue is proper with respect to Credit Suisse. This, however, is not sufficient to establish venue with respect to the other defendants. See FS Photo, 48 F.Supp.2d at 446 (explaining that a "co-conspirator venue theory" applies only where venue established over one co-conspirator by virtue of an act or transaction performed in the district by that conspirator in furtherance of the conspiracy).

For these reasons, venue in the District of Delaware is inappropriate under § 44 of the ICA. The court now must determine whether venue is appropriate under the general venue statute, 28 U.S.C. § 1391(b), (c). FN4 That statute provides that:

> FN4. Generally, "special" venue statutes (like § 44 of the ICA) have not been construed to exclude the operation of § 1391 where the "special" statute expands rather than contracts venue. See 17 James W. Moore et al., *Moore's Federal Practice* § 110.01[3][b], at 110-16 (3d ed.1999). Section 44 of the ICA appears to expand the venue options available under § 1391.

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

*Id.* § 1391(b), (c).

Section 1391 also does not support laying venue in Delaware. Credit Suisse, a Delaware LLC, resides in Delaware (its place of incorporation) and in New York (its principal place of business) for purposes of § 1391. See id. § 1391(c). Likewise, the Fund resides in Maryland and New York for purposes of venue. It is unclear, however, where the individual defendants reside. Because neither the complaint nor any of the affidavits establish the residency of the individual defendants, plaintiff has not met his burden of establishing venue in the District of Delaware under § 1391(b)(1).

*4 Similarly, venue in this district is inappropriate under § 1391(b)(2) because a substantial part of the events or omissions giving rise to plaintiff's claim occurred in New York City. For instance, plaintiff alleges that the individual director defendants have breached various fiduciary duties. (See, e.g., D.I. 1 ¶¶ 31-33) The directors, however, manage the fund in New York City, not Delaware. The complaint also alleges that these directors postponed a shareholder meeting in violation of certain fiduciary duties. (D.I. 1 at 34) Significantly, though, the individual director defendants issued the notice of postponement from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 291534 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

New York and it appears that the meeting was to occur in New York. (*See* D.I. 25, Ex. 2 at 2) Thus, plaintiff cannot establish venue in Delaware under § 1391(b)(2) because the acts/omission's giving rise to his complaint occurred in New York City.

Venue in Delaware is also inappropriate under § 1391(b)(3) because this action clearly could have been brought in the Southern District of New York, where the events giving rise to plaintiff's complaint occurred.

Thus, the court finds that venue is not properly laid in the District of Delaware. Because venue is not appropriate here, defendants urge the court to dismiss the action in its entirety. Plaintiff, on the other hand, requests that the court transfer the action to the Southern District of New York. A court may dismiss an action for failure to file in the appropriate district; however, "if it be in the interest of justice" the court may transfer the case "to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a). Although courts have held a transfer not to be in the interest of justice where a plaintiff brought an action in the wrong district for some improper purpose, *see, e.g., In re Hall Bayoutree Assocs., 939 F.2d 802, 805-06 (9th Cir.1991)*, there is no indication that such an improper purpose was present here. Accordingly, the court shall transfer plaintiff's case to the Southern District of New York.

### IV. CONCLUSION

For the aforementioned reasons, defendants' motion is denied. The court shall transfer plaintiff's case to the Southern District of New York. An appropriate order shall issue.

D.Del.,2000.  
Brautigam v. Priest  
Not Reported in F.Supp.2d, 2000 WL 291534 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.