IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FORTUNET, INC., a Nevada corporation and MILLENNIUM GAMES, INC., a Nevada corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>MELANGE COMPUTER SERVICES, INC., a Michigan corporation, and PLANET BINGO, LLC., a California limited liability company,<br><br>        Defendants.<br><br>And Related Counterclaims<br>And all Consolidated Matters | Misc. No. 06-7 (KAJ) |

## DECLARATION OF MICHAEL D. ROUNDS IN SUPPORT OF PLAINTIFFS' BRIEF IN OPPOSITION TO MELANGE'S MOTION TO QUASH SUBPOENA DUCES TECUM

I, Michael D. Rounds, do hereby declare and state:

1. I am counsel of record for Plaintiff/Counter-Defendant FortuNet, Inc. ("FortuNet") in this action. I have reviewed Defendant/Counter-Plaintiff Melange Computer Services, Inc.'s ("Melange") Motion and Brief in Support of Motion to Quash Subpoena Duces Tecum, and file this declaration in opposition thereto. This declaration is based upon my personal knowledge.

2. By way of background, this is a patent infringement action filed in the District of Nevada, entitled *FortuNet, Inc., et al., v. Melange Computer Services, Inc. et al., CV-S-04-1488 PMP (PAL)*. In the lawsuit, FortuNet alleges that Melange has infringed FortuNet's U.S. Patent No. 4,856,787 ("'787 patent") through at least the sale of its Max Pak device and system. The '787 patent and representative advertising literature for the accused Max Pak device and system are attached hereto as Exhibits A and B.

2A.   Claim 1 of the '787 patent discloses a game network in which a player can play two or more games that are "executed concurrently" on the player's unit or "slave game device." By way of example, a player can play bingo or poker on the player's unit. The only defense to infringement raised by Melange is whether its Max Pak player's unit executes its numerous games such as Bingo, Bonanza Bingo, VIPick'em, Poker and Keno "concurrently."

2B.   Prior to the litigation with Melange, FortuNet successfully asserted the '787 patent against BK Entertainment ("BK," formerly known as Stuart Entertainment). A true and correct copy of the Court's Order finding infringement on summary judgment is attached hereto as Exhibit C. BK subsequently filed bankruptcy in the District of Minnesota as a result of the litigation (and for other reasons), and FortuNet was forced to settle a patent case with potentially massive damages for $375,000. A true and correct copy of the settlement agreement is attached hereto as Exhibit D.

2C.   As I understand it, Melange and BK have had a business relationship since approximately 1998, in which BK's player units have at least been used with Melange's Epic software bingo system. On November 29, 2005, I took the deposition of William Wei, Melange's President, concerning the relationship between Melange and BK Entertainment, and precisely what the nature of Melange's past and present relationship with BK Entertainment is. The deposition transcripts are not attached because opposing counsel has marked them "Attorney's Eyes Only" under the protective order in the Nevada action.

2D.   During the deposition, I learned that Melange had either refused to produce documents or redacted them on the basis that it had confidentiality agreements with BK. In subsequent meet and confer conferences with opposing counsel, I was advised that BK refused to allow its allegedly confidential information to be produced under the protective order in the Nevada action. Accordingly, my office prepared subpoenas for BK's documents because this was the only way to obtain this important

2

and relevant information.

3. On December 22, 2005, FortuNet served third party BK Entertainment, Inc. ("BK") with a subpoena duces tecum. See Exhibit 1 to Melange's Motion. There are three narrowly tailored document requests at issue that FortuNet seeks from BK Entertainment: first, any and all agreements with Melange from 1997 through the present; second, any and all agreements with bingo halls that refer to Melange and any electronic bingo player unit offered for sale by BK; and third, representative accounting records showing any revenue received by BK Entertainment under any of the agreements set forth in the previously mentioned agreements. Id.

4. BK is incorporated in the state of Delaware, and was incorporated on October 31, 1986. Attached hereto as Exhibit E is a true and correct copy of a printout from the Delaware Secretary of State website. BK's agent for service of process is the Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. BK is listed as a "domestic" corporation on the State of Delaware's Division of Corporations' website. BK's website, www.bingoking.com, identifies it as a holding company, doing business as various entities in North America.

5. On December 28, 2005, Melange's counsel Mark Fox sent me a letter complaining that the subpoena was: (1) issued from the District of Nevada; (2) did not include a proper witness fee and mileage check; and (3) did not provide for reasonable time for compliance. See Exhibit 3 to Melange's Motion.

6. On December 29, 2005, FortuNet advised BK, and all defense counsel, that it was withdrawing its December 22nd subpoena, and was serving BK with a revised subpoena. See Exhibit 4 to Melange's Motion. I considered the paragraph (1) objection to be a technical issue that could be resolved amongst counsel, but drafted a new subpoena to quickly resolve the issue in any event.

7. On December 30, 2005, BK counsel Karpenko wrote a letter to me complaining about the December 22nd subpoena. See Exhibit 2 to Melange's Motion. As

3

with Mr. Fox' letter, Mr. Karpenko complained that the subpoena had issued from the District of Nevada instead of the District of Delaware, and that the subpoena did not comply with 28 U.S.C. 1783 (i.e., the "Walsh Act"). Id. In essence, Mr. Karpenko mirrored Mr. Fox' comments.

8. On January 3, 2006, I responded to defense counsel Fox's December 28th letter, which is attached hereto as Exhibit F. In that letter I stated that a new subpoena had been issued correcting the subpoena with this Court's caption, and disputed Melange's Walsh Act and other arguments. Id.

9. On January 4, 2006, I wrote BK counsel Karpenko a similar letter, stating that a new subpoena had been issued, that the Walsh Act arguments were without merit, and that FortuNet would file a motion to compel if BK maintained its objections. A true and correct copy of this letter is attached hereto as Exhibit G.

10. On January 7, 2006 (when he knew I was out of town), defense counsel Fox sent me an email, attached hereto as Exhibit H. Mr. Fox repeated his Walsh Act and witness/mileage fee arguments, and demanded that the December 29th subpoena be withdrawn. On the same day, I responded to Mr. Fox' email, rejecting his arguments and artificial deadline, and pointing out his continuing interference with a simple and legitimate request for documents. Id. Mr. Fox again responded by stating that Melange had standing to move to quash the subpoena since the subpoena allegedly amounted to an "abuse of process," and then continued with a now routine disparagement of FortuNet, its principals and its case. Id.

11. On January 9, 2006, Mr. Fox allegedly emailed me a copy of the Motion to Quash Subpoena Duces Tecum, attached hereto as Exhibit I, indicating that the Motion had to be filed on January 9, 2006 because the return date was on January 11, 2006. The Motion was not attached. I emailed him a response the same day, attached hereto as Exhibit J, indicating that he had not asked for an extension on the subpoena, and had therefore not met the meet and confer requirements. I subsequently learned that the

subpoena was not due to be responded to until January 13, 2006, not January 11, 2006, and also advised Mr. Fox of this as well. Id.

12.  To date, BK has not sent a letter objecting to or requesting an extension of the December 29th subpoena, but only stating that it will respond, as appropriate, after the Court rules on the Motion. A true and correct copy of the January 10, 2006 letter from Karpenko is attached hereto as Exhibit K.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: January 24, 2006        By: _____
                                    MICHAEL D. ROUNDS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 24, 2006, the attached document was mailed via first class mail to the following non-registered participants and was electronically filed with the Clerk of the Court using CM/ECF:

Mark Fox
Toni Harris
Fraser, Treblicock, Davis & Dunlap
124 West Allegan Street, Suite 1000
1000 Michigan National Tower
Lansing, MI 48933

Jeffery Weiss
Karen Sepura
Veronica Adele Cao
Weiss, Moy & Harris
4204 North Brown Avenue
Scottsdale, AZ 85251

By: /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

716600