# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**FORTUNET, INC.**, a Nevada corporation, and
**MILLENNIUM, INC.**, a Nevada corporation,

Plaintiffs/Counter-Defendants,

v.

**MELANGE COMPUTER SERVICES, INC.,**
a Michigan corporation, and
**PLANET BINGO, LLC.,**
a California limited liability company,

Defendants/Counter-Plaintiffs.

Misc. Case No. 06-007 (KAJ)

U.S. District Court for the
District of Nevada
Case No. CV-S-04-1448 PMP (PAL)

---

## DEFENDANT/COUNTER-PLAINTIFF MELANGE COMPUTER SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION QUASH SUBPOENA DUCES TECUM DIRECTED TO WITNESS LOCATED IN FOREIGN COUNTRY

OF COUNSEL:
Mark R. Fox
Fraser Trebilcock Davis & Dunlap, P.C.
124 West Allegan Street
Suite 1000
Lansing, Michigan 48933
(517) 482-5800 - Telephone
(517) 482-0887 - Facsimile
mfox@fraserlawfirm.com

Attorneys For Defendant/Counter-Plaintiff
Melange Computer Services, Inc.

January 31, 2006

C. Malcolm Cochran IV  (#2377)
cochran@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700 – Telephone
(302) 651-7701 – Facsimile

RLF1-2975994-1

# TABLE OF CONTENTS

TABLE OF AUTHORITES ......................................................................................... ii

I.   FORTUNET'S COMPLAINT ALLEGES INFRINGEMENT BY
     MELANGE *SOLELY* AS TO ITS MAX PAK PRODUCT.....................................1

II.  UNDER RULE 45 AND 28 U.S.C. § 1783, THE SUBPOENA COULD
     NOT BE ISSUED ABSENT AN APPROVAL AND ORDER OF THIS
     COURT, AND FORTUNET CITES NO AUTHORITY TO THE
     CONTRARY............................................................................................................4

III. MELANGE HAS STANDING TO CHALLENGE THE SUBPOENA
     BECAUSE IT WAS UNLAWFULLY ISSUED.......................................................8

IV.  EVEN IF FORTUNET HAD FILED A MOTION FOR ISSUANCE OF
     THE SUBPOENA, IT COULD NOT MEET ITS BURDEN OF
     SHOWING THAT THE DOCUMENTS WERE NECESSARY IN THE
     INTEREST OF JUSTICE AS REQUIRED BY 28 U.S.C. § 1783(A)...................10

V.   BK HAS OBJECTED TO RESPONDING TO A SUBPOENA FROM
     FORTUNET NOT AUTHORIZED BY THE COURT PURSUANT TO
     RULE 45(b)(2) AND 28 U.S.C. § 1783 ...............................................................11

CONCLUSION......................................................................................................... 12

# TABLE OF AUTHORITES

## Cases

*Automated Business Co., Inc. v. NEC America, Inc.*,
  202 F.3d 1353 (Fed. Cir. 2000) ................................................................................. 3

*Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*,
  231 F.R.D. 426 (M.D. Fla. 2005) ............................................................................. 9

*Brautigam v. Priest*,
  2000 WL 291534 (D. Del. Mar. 2, 2000) ................................................................ 7

*First American Corp. v. Price Waterhouse, LLP*,
  988 F. Supp. 353 (S.D.N.Y. 1997) .......................................................................... 6

*Gateway Bank v. GMG Brokerage Serv., Inc.*,
  2002 WL 32002677 (D. Conn. 2002) ...................................................................... 5

*Ghandi v. Police Dept. of Detroit*,
  74 F.R.D. 115, 121 (E.D. Mich. 1977) .................................................................... 6

*In re Grand Jury Subpoena Duces Tecum Addressed to Canadian Int'l Paper Co.*,
  72 F. Supp. 1013 (S.D.N.Y 1947) ........................................................................... 7

*In re Letter Rogatory from the Justice Court, District of Montreal, Canada*,
  523 F.2d 562 (6th Cir. 1975) ............................................................................... 8, 9

*In re Thompson*,
  213 F. Supp. 372 (S.D. N.Y. 1963) ......................................................................... 5

*Integra Lifesciences I, Ltd v. Merck KGaA*,
  190 F.R.D. 556 (S.D. Cal. 1999) ............................................................................. 8

*Klesch & Company Ltd v. Liberty Media Corp.*,
  217 F.R.D. 517 (D. Colo. 2003) .............................................................................. 5

*Kolyba Corp. v. Banque Nationale De Paris*,
  316 A.2d 585 (Del. Ch. 1973) ............................................................................. 4, 7

*Monarch Assurance PLC v. United States*,
  244 F.3d 1356 (Fed. Cir. 2001) .............................................................................. 4

*Rivera v. Nibco, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) *cert. denied*, 125 S.Ct. 1603 (2005) ................................ 4

*Sears, Roebuck & Co. v. Sears*,
  744 F. Supp. 1297 (D. Del 1990) .................................................................................. 7

*Tottenham v. Trans World Gaming Corp.*,
  2002 WL 1967023 (S.D.N.Y. June 21, 2002) ............................................................... 4

*United States v. Consolidated Edison Co.*,
  1988 WL 138275 (E.D.N.Y. Dec. 15, 1988) .................................................................. 4

*Waldron v. Cities Serv. Co.*,
  361 F.2d 671 (2d Cir. 1966), *aff'd*, 391 U.S. 253 (1968) .............................................. 3

## Statutes

28 U.S.C. § 1783 ................................................................................................ *passim*

28 U.S.C. § 1783(a) ....................................................................................... 4, 5, 11

28 U.S.C. § 1783(b) ................................................................................................ 5

## Rules

Fed. R. Civ. P. 26(b)(1) ...................................................................................... 10, 11

Fed. R. Civ. P. 45(b)(1) ............................................................................................ 7

Fed. R. Civ. P. 45(b)(2) ................................................................................. 5, 7, 11, 12

RLF1-2975994-1

Movant, Melange Computer Systems, Inc. ("Melange"), hereby replies to FortuNet's Brief in Opposition to Motion to Quash Subpoena Duces Tecum:

## I.     FORTUNET'S COMPLAINT ALLEGES INFRINGEMENT BY MELANGE *SOLELY* AS TO ITS MAX PAK PRODUCT.

At the outset, it is very important to explain that, in its response brief filed with this Court, FortuNet, Inc. ("FortuNet") mischaracterizes or, at least, attempts to recast its narrow patent infringement claim in the underlying case pending in Nevada. FortuNet's representation to this Court that it has alleged patent infringement by Melange "through at least the sale of its Max Pak device and system" is incorrect and an attempt to leave this Court with the distinctly false impression that its patent infringement claim is far broader than it is in reality, i.e., that it has supposedly alleged patent infringement by Melange as to products other than just the Max Pak product. (FortuNet's brief, D.I. 6 at p. 2).[1]

In fact, FortuNet's Third Amended Complaint (its current pleading which was not attached as an exhibit to FortuNet brief) alleges only *one* solitary count of patent infringement by Melange and only as to *one* of its products, the Max Pak product. (Complaint, Exhibit 1, ¶¶ 31-44).[2] This is a critical point because the documents sought by FortuNet through its purported subpoena to BK Entertainment, Inc. ("BK") have nothing whatsoever to do with Melange's Mak Pak, its one alleged infringing product.

---

[1] FortuNet's representation to this Court that Melange has raised "only one defense to infringement" is also demonstrably incorrect. Melange has asserted numerous defenses, including those set forth in its Answer and Affirmative Defenses. (Answer and Affirmative Defenses, Exhibit 1.)

[2] In fact, the only reference to any alleged infringing product in FortuNet's brief is Exhibit B to FortuNet's counsel's declaration, which is a piece of literature describing only the Max Pak product.

1

The documents sought from BK are wholly irrelevant to FortuNet's very narrow and limited patent infringement claim in the underlying lawsuit because it is seeking documents not related to Melange's Max Pak product, but documents related to all of Melange's other products, including even non-electronic gaming products.

A mere review of the list of documents sought by FortuNet's establishes that the subpoena *duces tecum* is extremely overbroad on its face, particularly given its narrow one-count, one-product patent infringement claim. FortuNet's subpoena seeks:

> (1)  Any and all agreements with Melange Computer Services, Inc. from 1997 through the present;

> (2)  All agreements with bingo halls that refer to Melange Computer Services, Inc. and any electronic unit offered for sale by BK Entertainment; and

> (3)  Representative accounting records showing any revenue received by BK Entertainment under any of [these] agreements.

(Subpoena, Exhibit 3; see also FortuNet's brief, D.I. 6 at p. 2).

It is remarkably revealing that FortuNet's subpoena is not limited to documents relating to the Melange's Max Pak product, the sole alleged infringing product. Rather, FortuNet seeks any and all agreements and accounting records that pertain or refer to Melange, regardless of which products or services are involved. Frankly, it is difficult to imagine how FortuNet could cast a wider fishing net. Indeed, FortuNet admits to this Court that it is seeking such far-ranging documents as those pertaining to the use by BK of Melange's Epic software product with *"BK's player units."* (FortuNet's brief, D.I. 6 at p. 2).[3]  FortuNet's characterization of the Epic software as "Melange's Epic software

---

[3] FortuNet states that it thinks "BK's player units have at least been used with Melange's Epic software bingo system." (FortuNet's brief, D.I. 6 at p. 2).  Thus, it appears that FortuNet may also be seeking to drum up some new contributory infringement theory

bingo system" is incorrect and highly misleading. (FortuNet's brief, D.I. 6 at p. 2). As FortuNet well knows, Epic is actually a state-of-the-art management and accounting software product, not a bingo system or electronic gaming product.

Thus, it is beyond serious argument that FortuNet is improperly attempting to use the pending Nevada action – which alleges infringement only as to Melange's Max Pak product – to fish around for some other basis upon which to sue Melange and/or to obtain proprietary and confidential information for competitive purposes. Since Melange's position on the most important, if not dispositive, claim construction issue regarding its patent was adopted by the Court in Nevada and FortuNet's position was squarely rejected,[4] FortuNet has good reason to be concerned that its sole infringement claim is in severe jeopardy and that it needs to try to find some other basis to sue Melange. However, FortuNet may not use the underlying pending case "to determine whether any other [Melange] product infringes its patent." *See, e.g., Automated Business Co., Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1354 (Fed. Cir. 2000)(citing to Automated Business Cos., No. 4:98-CV-529-A (N.D. Tex. 1998).

It is well-settled that a party may not use discovery to engage in a "fishing expedition" to determine if it has claim or to discover some new or additional claim. *See, e.g., Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966), *aff'd*, 391 U.S. 253 (1968) (denying discovery where "plaintiff sought to engage in still another 'fishing expedition' in the hope that he could come up with some tenable cause of action");

---

against Melange based on BK's player units, a company with whom FortuNet concedes it previously sued and settled over the same patent at issue, the '787 Patent. What is even more odd is that FortuNet has granted BK a license utilize the invention and technology disclosed in the '787 Patent. (Exhibit D to FortuNet's counsel's declaration).

[4] The District Court in Nevada agreed with Melange that the claim term "executing concurrently" means "play simultaneously."

*Rivera v NIBCO, Inc*, 364 F.3d 1057, 1072 (9th Cir. 2004) *cert. denied*, 125 S.Ct. 1603 (2005)("district courts need not condone the use of discovery to engage in 'fishing expedition(s).'"); *Tottenham v Trans World Gaming Corp.*, 2002 WL 1967023, *2 (S.D.N.Y. June 21, 2002) (Exhibit 4) (court would "not condone" discovery where "Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged" in the pleadings) (also citing *United States v Consolidated Edison Co.*, 1988 WL 138275, *1-2 (E.D.N.Y. Dec. 15, 1988) (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint); *Monarch Assurance PLC v. United States*, 244 F.3d 1356, 1365 (Fed. Cir. 2001)).[5]

## II.    UNDER RULE 45 AND 28 U.S.C. § 1783, THE SUBPOENA COULD NOT BE ISSUED ABSENT AN APPROVAL AND ORDER OF THIS COURT, AND FORTUNET CITES NO AUTHORITY TO THE CONTRARY.

The plain language of Section 1783(a) is clear and unambiguous. It provides that "[a] court of the United States may **order the issuance** of a subpoena requiring the appearance as a witness . . . of a national or resident of the United States **who is in a foreign country**, or requiring the production of a specified document. . .." (Emphasis added.) A simple, straightforward application of the rules of statutory construction lead to the inescapable conclusion that Section 1783 requires a court "order" for the "issuance of a subpoena" to a witness, such as BK, "who is in a foreign country." There is no dispute that BK is physically located in Canada. Indeed, the subpoena at issue

---

[5] *Cf Kolyba Corp. v. Banque Nationale De Paris*, 316 A.2d 585 (Del. Ch. 1973) (a Chancery Court case cited by FortuNet for a different, non-controversial proposition).

4

specifically lists BK's address as being in Canada. Moreover, Exhibit D to FortuNet's counsel's declaration, which is a copy of the Settlement and License Agreement between FortuNet and BK, recites that BK Entertainment, Inc.'s address is "301 Louth Street, St. Catherines, Ontario, Canada L2S 3V6." (*See also* Section 22 of Exhibit D to D.I. 6).

That Section 1783(a) requires a court order for the issuance of the subpoena directed to a U.S. resident located in a foreign country is further reinforced by Section 1783(b), which requires that the "order" entered by the court authorizing the issuance of such a subpoena include the court's determination of the dollar amount to be tendered for the non-party's travel and attendance expenses:

> The person serving the subpoena shall tender to the person to whom the subpoena is addressed his estimated necessary travel and attendance expenses, **the amount of which shall be determined by the *court* and stated in the *order* directing the issuance of the subpoena**.

28 U.S.C. § 1783(b)(Emphasis added).    Since this Court never issued any order authorizing the issuance of the subpoena to BK, there was never any determination by this Court of the appropriate amount to be tendered to BK for travel and attendance from Canada to Delaware.

Although the statutory language is clear on its face, in its opening brief, Melange also cited case law in direct support of its position that Rule 45(b)(2) and 28 U.S.C. § 1783 required FortuNet to obtain an order from this Court for the issuance the subpoena *duces tecum* directed to BK, which is located in Canada, *e.g.*, *Klesch & Company Ltd v. Liberty Media Corp.*, 217 F.R.D. 517 (D. Colo. 2003), *Gateway Bank v. GMG Brokerage Serv., Inc.*, 2002 WL 32002677 (D. Conn. 2002) (Exhibit 5); *In re Thompson,* 213 F. Supp. 372, 374 (S.D. N.Y. 1963) (citing *Blackmer v. United States*, 284 U.S. 421 (1932).

In its response brief, FortuNet makes absolutely no effort to distinguish any of these cases or to even suggest that they stand for anything other than exactly the proposition for which Melange cited them. In fact, <u>FortuNet never mentions, let alone discusses, this line of relevant case law cited by Melange</u>. Moreover, <u>FortuNet does not, because it cannot, cite a single case in support of its contention that Section 1783 is inapplicable to the issuance of a subpoena to a U.S. witness located in a foreign country.</u> Instead, FortuNet cites this Court to some completely inapposite and wholly irrelevant cases with absolutely no application to the instant facts or issue.

The cases cited by FortuNet demonstrate that it fails to grasp the issue. It confuses "service" of a subpoena with "issuance" of a subpoena. FortuNet also erroneously believes that the existence of personal jurisdiction obviates the requirements of complying with 28 U.S.C. § 1783 – but, of course, it cites not a single case in support of this novel assertion.

FortuNet relies most heavily on *First American Corp. v. Price Waterhouse, LLP*, 988 F. Supp. 353, 360-61 (S.D.N.Y. 1997), for the proposition that the Section 1783 does not apply because BK was incorporated in Delaware. However, *First American* had nothing to do with Section 1783 or the "issuance" of a subpoena or a U.S. resident located in a foreign country. Rather, in *First American Corp.*, the court simply held that, since one of five Price Waterhouse-related foreign firms was subject to the personal jurisdiction of the court in New York, it was also subject to "service" of a subpoena for documents. In the case *sub judice*, the issue is not whether BK is subject to personal jurisdiction in Delaware or whether "<u>service</u>" of the subpoena was proper – the issue is

whether the subpoena was properly "issued" in the first place.[6] It is axiomatic that proper service cannot cure a subpoena that is defective or invalid on its face.

FortuNet's citation of *Ghandi v. Police Dept. of Detroit*, 74 F.R.D. 11, 121 (E.D. Mich. 1977), for the proposition that "[a] corporation may be served with a subpoena anywhere it has minimum contacts," adds nothing to its argument because this case has no bearing on the issue at hand. Again, the question is not whether the "service" of the subpoena was proper – the question is whether the "issuance" of the subpoena was lawful.

Similarly, FortuNet's reliance on *Brautigam v. Priest*, 2000 WL 291534 (D. Del. Mar. 2, 2000), and *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1303 (D. Del 1990), for the proposition that a corporation "can be sued in any district where it is incorporated" is equally misplaced. This issue before this Court is not whether BK could be "sued" in Delaware as a party defendant. Here, BK is a non-party and it is the validity of the "issuance" of the subpoena that Melange challenges.

FortuNet also attempts to defend its action in issuing the subpoena absent a court order pursuant to Section 1783 by citing *Kolyba Corp. v. Banque Nationale De Paris*, 316 A.2d 585 (Del. Ch. 1973), for the proposition that Delaware law allows "service" of a subpoena on a corporation's registered agent. Since Melange is not challenging the "service" of the subpoena, but challenging the "issuance" of the subpoena, this case does nothing to justify FortuNet's action or position in this matter.

Finally, FortuNet cites *In re Grand Jury Subpoena Duces Tecum Addressed to Canadian Int'l Paper Co.*, 72 F. Supp. 1013, 1020 (S.D.N.Y 1947), for the proposition

---

[6] Actually, it is not clear whether the subpoena was properly served and accompanied by the witness fee and mileage check as required by Rule 45(b)(1) and (2).

that a corporation is not excused from producing documents on the basis that they are located outside the United States. This case has no relevance to the issue before this court. In that case, the subpoena was directed to a Canadian corporation, not a U.S. company located in Canada, such as BK. The issue in that case was whether personal jurisdiction existed over the Canadian corporation so as to make it amenable to "service" of a subpoena. That case had nothing to with the whether the subpoena was "issued" in compliance with law and, therefore, is of no moment or relevance. Although the court rejected the Canadian's corporation's argument that it could "evade complying with the subpoena" on the basis its documents were not located in the United States, this is not the issue raised by Melange in its motion.

Thus, FortuNet has simply presented this Court with completely irrelevant cases that do not address, much less discuss, the issue to be decided by this Court. <u>Not one of the cases cited by FortuNet even mentions Section 1783</u>, and certainly none of them lend any support whatsoever for FortuNet's untenable position.

### III.    MELANGE HAS STANDING TO CHALLENGE THE SUBPOENA BECAUSE IT WAS UNLAWFULLY ISSUED.

As Melange discussed in its opening brief, where a subpoena to a non-party is issued in violation of law or court order, a party to the lawsuit has standing to move to quash the subpoena. In support of this position, Melange cited *In re Letter Rogatory from the Justice Court, District of Montreal, Canada*, 523 F.2d 562 (6th Cir. 1975); *Integra Lifesciences I, Ltd v Merck KGaA*, 190 F.R.D. 556 (S.D. Cal. 1999). In the case of *In re Letter Rogatory*, the Sixth Circuit made clear that when Congress has regulated the requirements for issuance of a subpoena, a party has standing to challenge the validity

8

of a subpoena to a non-party if it is not issued in compliance with the federal statute:

> [I]t does not follow that appellant lacks standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute.
>
> . . .
>
> **Thus a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of the applicable statute, here 28 U.S.C. § 1782. We hold that Fecarotta has standing to challenge the validity of the subpoena on the theory that it is not authorized by § 1782, the governing statute.**

(Emphasis added.)[7]

As with case law cited by Melange supporting its Walsh Act position, FortuNet again simply ignores the on-point authorities cited by Melange in support of its position that is possessed of standing to move to quash in this matter. Instead, FortuNet cites Wright & Miller and a few cases for the proposition that a party "generally" has no standing to challenge a subpoena directed to a non-party. Of course, in the cases cited by FortuNet, there was no dispute as to validity of the "issuance" of the subpoena or whether it complied with law or court order. Thus, FortuNet confuses the tests for standing applied to "validly" issued subpoenas versus "invalidly" issued subpoenas. Thus, the authorities relied upon FortuNet for its standing argument miss the mark.

Finally, since the subpoena at issue was issued by FortuNet's counsel under the auspices of this Court, to the extent that the subpoena is invalid for failure to company with Section 1783, this Court has the inherent authority to quash the subpoena *sua sponte*.

---

[7]  *See also, Auto-Owners Ins. Co. v Southeast Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005) (party has standing to move to quash subpoena duces tecum directed to non-party to enforce compliance with court rules and court order).

9

## IV.  **EVEN IF FORTUNET HAD FILED A MOTION FOR ISSUANCE OF THE SUBPOENA, IT COULD NOT MEET ITS BURDEN OF SHOWING THAT THE DOCUMENTS WERE "NECESSARY IN THE INTEREST OF JUSTICE" AS REQUIRED BY 28 U.S.C. § 1783(A).**

In its answering brief, FortuNet makes what appears to be a perfunctory request for an order allowing issuance of a subpoena "if the Court deems the Walsh Act applicable." However, FortuNet has not filed a motion as required by the rules. Moreover, FortuNet bases its request on the false representation that the documents sought "go to the core of the infringement in this case." As explained *supra*, the documents sought are absolutely irrelevant to the one count patent infringement claim pleaded by FortuNet as to Melange's Max Pak product. Besides, even if this Court were to construe this perfunctory request as a motion, it is supported by nothing more than the vague argument of counsel.

In any event, as noted *supra*, FortuNet is not seeking documents from BK that are related to its solitary claim of patent infringement by the Melange through its Mak Pak product. Thus, none of the documents it seeking from BK are the least bit relevant to FortuNet's infringement claim or reasonably calculated to lead to admissive evidence that is relevant to its infringement claim. While federal discovery tends to be fairly liberal, the right to discovery is not unlimited in scope or license to discovery anything that might be of interest to a party. Fed. R. Civ. P. 26(b)(1), which sets forth the general limitation on discovery, provides:

> Parties may obtain discovery regarding any matter, not privileged, that is **relevant to the claim** or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter

involved in the action. Relevant information need not be admissible at the trial **if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.** All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

(Emphasis added.)

In addition to Rule 26(b)(1), there is an another, separate requirement imposed under 28 U.S.C. § 1783 for subpoenas "issued to "a national or resident of the United States who is in a foreign country." That additional and separate requirement is that the documents sought must be "necessary in the interest of justice." Section 1783(a) so provides:

> A court of the United States may **order** the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, **if the court finds that particular testimony or the production of the document or other thing by him is *necessary in the interest of justice. . ..***

(Emphasis added.)

FortuNet cannot meet the low threshold set in Rule 26(b)(1), let alone the more stringent requirement of Section 1783(a). Thus, had FortuNet filed a motion for issuance of the subpoena as required pursuant to Rule 45(b)(2) and Section 1783, it would not have even come within striking distance of meeting the requirements for issuance.

## V.     BK HAS OBJECTED TO RESPONDING TO A SUBPOENA FROM FORTUNET NOT AUTHORIZED BY THIS COURT PURSUANT TO RULE 45(b)(2) AND 28 U.S.C. § 1783.

FortuNet would have this Court believe that BK has taken no position on this subpoena *duces tecum* matter. (FortuNet's Brief, p. 4). That is not correct. On December 30, 2005, in responding the FortuNet's initial subpoena *duces tecum*, BK's

counsel indicated that "Rule 45(b)(2) provides that a subpoena directed to a witness in a foreign country who is a national or resident of the United States shall issue under the circumstances and in the manner and be served as provided in 28 U.S.C. § 1783." (Exhibit 6). BK's counsel further made clear that **"[b]ecause the subpoena is invalid under Federal Rule of Civil Procedure and 28 U.S.C. § 1783, BK objects to the subpoena and will not be producing documents."** (Exhibit 6, emphasis added). The only difference between the two subpoenas is that the first was issued ostensibly under the auspices of the U.S. District Court for the District of Nevada, and second was issued ostensibly under the auspices of this Court. The second subpoena, just like the first one, fails to comply with the requirements Rule 45(b)(2) and Section 1783.

## CONCLUSION

Therefore, based upon the foregoing authorities, argument and reasons, Melange respectfully requests that this Court issue an Order quashing and holding for naught the subpoena *duces tecum* issued under its auspices by FortuNet's counsel. Since FortuNet lacks any good faith argument for issuing the subpoena absent court order, particularly given that it was advised of the requirements of Section 1783, and since FortuNet has refused to voluntarily withdraw the subpoena, Melange requests an award of its reasonable attorney fees and costs incurred in having to bring this motion, as this Court deems appropriate.

12

OF COUNSEL:

Mark R. Fox
Fraser Trebilcock Davis & Dunlap, P.C.
124 West Allegan Street
Suite 1000
Lansing, Michigan 48933
(517) 482-5800
mfox@fraserlawfirm.com

Dated: January 31, 2006

*Kelly E. Farnan*

C. Malcolm Cochran IV  (#2377)
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700 – Telephone
(302) 651-7701 – Facsimile
Cochran@RLF.com
Farnan@RLF.com

*Attorneys for Defendant*
*Melange Computer Services, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filings, and hand delivered, to the following:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter, Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, DE 19899-0951

I hereby certify that on January 31, 2006 I sent the foregoing document by Federal Express to the following non-registered participants:

> Michael Rounds, Esquire
> Waston Rounds
> 5371 Kietzke Lane
> Reno, Nevada 89511
>
> Jeffrey Weiss, Esquire
> Weiss, Moy & Harris, P.C.
> 4204 North Brown Avenue
> Scottsdale, Arizona 85251-3914

Kelly E. Farnan (#4395)
Farnan@RLF.com