# EXHIBIT 1

1

2  Mark R. Fox
   Fraser Trebilcock Davis & Dunlap, PC
3  1000 Michigan National Tower
   Lansing, Michigan 48933
4  (517) 482-5800

5  John R. Bailey
   Law Offices of John R. Bailey
6  City Center West ~ Suite 108
   7201 West Lake Mead Blvd.
7  Las Vegas, Nevada 89128
8  (702) 562-8820

9                    UNITED STATES DISTRICT COURT
10                        DISTRICT OF NEVADA

11  FORTUNET, INC., a Nevada corporation, and        Case Number:  CV-S-04-0556-RCJ-RJI
    MILLENNIUM, INC., a Nevada corporation,
12
13              Plaintiffs,                           ANSWER AND COUNTERCLAIMS

14  v.

15  MELANGE COMPUTER SERVICES, Inc., a
16  Michigan corporation, and PLANET BINGO,
    LLC., a California limited liability company,
17
               Defendants.
18
19  PLANET BINGO, LLC., a California
    Limited liability company,  and MELANGE
20  COMPUTER SERVICES, Inc , a Michigan
    corporation
21
               Counterclaimants,
22
23  v.

24  FORTUNET, INC., a Nevada corporation;
    MILLENNIUM, INC., a Nevada corporation;
25  and JACK B. CORONEL, an individual,

26             Counterdefendants.

27

28



NOW COMES Defendant/Counterclaimant Melange Computer Services, Inc., a Michigan corporation ("Melange"), by and through its undersigned counsel, hereby answers the Third Amended Complaint ("Complaint") of Plaintiffs FortuNet, Inc. and Millennium, Inc. (collectively "Plaintiffs"), as follows:

## JURISDICTION AND VENUE

1.    Upon information and belief, Melange admits the allegations contained in Paragraph 1 of the Complaint.

2.    Upon information and belief, Melange admits the allegations contained in Paragraph 2 of the Complaint.

3.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 3 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

4.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 4 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

5.    Melange admits the allegations contained in Paragraph 5 of the Complaint.

6.    Melange admits the allegations contained in Paragraph 5 of the Complaint.

7.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 7 of the Complaint.

8.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 8 of the Complaint.

9.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 9 of the Complaint.

2

10.    Melange is without information sufficient upon which to admit or deny the allegations contained in Paragraph 10 the Complaint.

11.    Answering Paragraph 11, since these allegations constitute conclusions of law, no response is required and none given.

12.    Answering Paragraph 12, since this allegation constitutes a conclusion of law, no response is required and none given.

13.    Answering Paragraph 13, since these allegations constitute conclusions of law, no response is required and none given.

14.    Answering, Paragraph 14, since these allegations constitute conclusions of law, no response is required and none given.  However, Melange denies the allegation that it has induced acts of infringement with or without damages in this judicial district and further denies the allegation that its devices infringe Plaintiffs' patent.

15.    Answering Paragraph 15, Melange admits the allegations.

16.    Answering Paragraph 16, Melange denies these allegations for the reason that the same are not true.

17.    Answering Paragraph 17, Melange denies these allegations for the reason that the same are not true.

18.    Answering Paragraph 18, Melange denies these allegations for the reason that the same are not true and further avers that Plaintiffs' predicate is false.

19.    Answering Paragraph 19, since these allegations constitute conclusions of law, no response is required and none given.

20.    Answering Paragraph 20, since these allegations constitute conclusions of law, no response is required and none given.

3

## GENERAL ALLEGATIONS

21.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 21 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

22.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 22 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

23.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs

24.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 24 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

25.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 25 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

26.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 26 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs. However, upon information or knowledge, Melange denies that the '787 Patent is an important patent in the field of electronic gaming devices.

27.     Melange is without information or knowledge to form a belief as to the truth of the allegations of Paragraph 27 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs

4

28.     Melange admits only that the '787 patent bears an issue date of August 15, 1989, but denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Melange admits the allegations contained in Paragraph 29 of the Complaint.

30.     Exhibit A speaks for itself.

### FIRST CLAIM FOR RELIEF
**(Alleged Infringement of the '787 Patent Against Melange)**

31.     Melange hereby incorporates the allegations contained in Paragraphs 1-30 as if the same were fully repeated verbatim herein.

32.     Melange admits only that it has a device known as Max Pak, but denies the remaining allegations for the reason that the same are not true.

33.     Melange denies these allegations in the manner stated for the reason that the same are not true.

34.     Melange denies these allegations for the reason that the same are not true.

35.     Melange does not understand these allegations and, therefore, denies these allegations.

36.     Melange denies these allegations for the reason that the same are not true.

37.     Melange is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 37 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

38.     Melange is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 38 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

5

39.    Melange is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 39 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

40.    Melange is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 40 of the Complaint and, therefore, leaves Plaintiffs to their strictest proofs.

41.    Melange denies these allegations for the reason that the same are not true.

42.    Melange does not understand these allegations and, therefore, denies these allegations.

43.    Melange admits only that it may have demonstrated the Max Pak device on or about that time and at or about that place.

44.    Melange denies these allegations for the reason that the same are not true.

## SECOND CLAIM FOR RELIEF
### (Alleged Infringement of the '787 Patent against Planet Bingo)

45.    Melange hereby incorporates the allegations contained in Paragraphs 1-44 as if the same were fully repeated verbatim herein.

46.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

47.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these.

6

48.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

49.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

50.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these.

51.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

52.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

53.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

54.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

55.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

56.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

57    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

58.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations

59.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations

60.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

61.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

8

62. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

63. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

64. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

65. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

### THIRD CLAIM FOR RELIEF
#### (Alleged Unfair Competition Against Planet Bingo)
#### (NRS Chapter 598)

66. Melange hereby incorporates the allegations contained in Paragraphs 1-65 as if the same were fully repeated verbatim herein.

67. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

68. Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

9

69.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

70.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

71.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

72.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

73.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

74.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

75.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

10

76.    Since these allegations do not pertain to Melange, no response is required and none given. Further, Melange is without information or knowledge sufficient to form a belief as to the truth of these allegations.

## FOURTH CLAIM FOR RELIEF
### (Alleged Claim for Declaratory Relief)

77.    Melange hereby incorporates the allegations contained in Paragraphs 1-76 as if the same were fully repeated verbatim herein.

78.    Melange denies these allegations for the reason that the same are not true.

79.    Melange denies these allegations for the reason that the same are not true.

80.    Melange denies these allegations for the reason that the same are not true.

81.    No contest.

82.    The patents speak for themselves.

83.    Melange admits only that it markets this product, but does not understand the remaining allegation and therefore denies it.

84.    Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs.

85.    The patent speaks for itself.

86.    Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs.

87.    Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs. However, Melange denies that Plaintiffs could reasonably reach the conclusion they claim in this paragraph.

11

88.     Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs.

89.     Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs

90.     Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs.

91.     Melange denies these allegations for the reason that the same are not true.

92.     Melange denies these allegations for the reason that the same are not true

93.     Melange denies these allegations for the reason that the same are not true.

94.     Melange denies these allegations for the reason that the same are not true.

95.     Melange denies these allegations for the reason that the same are not true.

96.     Melange is without information or knowledge sufficient upon which to form a belief as to the truth of these allegations and, therefore, leaves Plaintiffs to their strictest proofs.

## GENERAL DENIAL

Melange denies each and every averment in the Complaint that is not specifically and expressly admitted herein.

## AFFIRMATIVE AND SPECIAL DEFENSES

1.     Plaintiffs have failed to state a claim upon relief may be granted.

2.     Plaintiffs' claims fail because the patent at issue is invalid.

3.     Plaintiffs' claims fail because the patent as issue is unenforceable.

4.     Plaintiffs' claims fail because of the non-infringement by Melange.

5.     Plaintiffs' claims are barred by the doctrine of prosecution history estoppel.

12

6.      Venue is improper and/or should be transferred under the doctrine of forum non-conveniens.

7.      The court lacks in personam jurisdiction.

8.      Plaintiffs' claims are barred by the doctrine of laches.

9.      Plaintiffs' claims are barred by the doctrine of unclean hands.

10.     Plaintiffs' claims are barred by the doctrine of waiver.

11.     Plaintiffs' claims are barred by the doctrine of acquiescence.

12.     Plaintiffs' claims are barred by the doctrine of estoppel.

13.     Plaintiffs' claims fails because of their patent misuse and/or unreasonable restrain of trade.

14.     Plaintiffs' claims fail as a result of their unfair competition.

15.     Plaintiffs' claims are interposed in, and barred by their bad faith, wrongful intent, recklessness, and/or gross negligence.

16.     Upon information and belief, after a reasonable opportunity for further investigation and discovery, one or more claims of U.S. Patent No. 4,856,787 will be found to be invalid for failure to comply with the patent laws, including, but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

17      Plaintiffs are estopped from recovering on the Complaint by reason of the conduct, statements, and omissions of their officers or agents.

18      Plaintiffs' claims are frivolous and were filed without reasonable inquiry within the meaning and provisions of Fed. R. Civ. P. 11.

19.     Plaintiffs' claims are frivolous and interposed to vexatiously multiply these proceedings within the meaning and provisions of 28 U.S.C. § 1927.

13

20.     Melange expressly reserves the right to amend and/or add affirmative defenses as further information is adduced through discovery or otherwise

WHEREFORE Melange having answered the Complaint, respectfully requests that this Honorable Court enter an Order:

A.     Dismissing Plaintiffs' complaint with prejudice;

B.     Granting judgment in favor of Melange on all claims;

C.     Declaring that Melange's devices do not infringe upon the Plaintiffs' patent;

D.     Declaring Plaintiffs' patent invalid and unenforceable;

E.     Sanctioning Plaintiffs and their counsel, in the form of an award of attorney fees and costs incurred by Melange, pursuant to Fed. R. Civ. P. 11 and/or 28 U.S.C. § 1927 for Defendant's filing its frivolous Counterclaim and vexatiously multiplying these proceedings;

F.     Awarding Plaintiff its damages, together with its fees and costs pursuant to 35 U.S.C. § 285 or otherwise, in connection with this case; and

G.     Any such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Melange hereby demands a trial by jury as to all claims triable to a jury

## COUNTERCLAIMS

NOW COMES Defendant/Counterclaimant Melange, and for its Counterclaims against Plaintiffs/Counterdefendants FortuNet and Millennium, Inc. (collectively "Counterdefendants"), states unto this Honorable Court as follows:

14

## NATURE OF THE ACTION

1.     This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., the patent laws of the United States, 35 U.S.C. §§ 1, et seq., and further includes non-federal claims over which this Court has pendent jurisdiction.

## THE PARTIES

2.     Melange is a Michigan corporation and at all times relevant hereto the exclusive licensee of United States Patent Nos. 6,656,045; 6,398.646; and 6,079,711 (attached as Exhibit F-H to Complaint).

3.     On information and belief, FortuNet is a corporation organized and existing under the laws of the State of Nevada and having a principal place of business in Las Vegas, Nevada.

4.     On information and belief, Millennium, Inc. is a corporation organized and existing under the laws of the State of Nevada and having a principal place of business in Las Vegas, Nevada.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1338.

6.     This Court has personal jurisdiction over FortuNet and Millennium and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

7.     Melange is informed and believes that FortuNet and/or Millennium have falsely represented that its progressive bingo game is patented, in violation of 35 U.S.C. § 292.

## COUNT I: DECLARATION OF NON-INFRINGEMENT

8.     Melange incorporates by reference the allegations set forth in Paragraphs 1-7 of the Counterclaim herein.

15

9.    Melange has not infringed and does not infringe any claim of the '787 Patent.

10.    An actual justifiable case or controversy exists because Counterdefendants have filed a complaint asserting that Melange has infringed the '787 Patent.

## COUNT II: DECLARATION OF INVALIDITY
### (Against FortuNet and Millennium)

11.    Melange incorporates by reference the allegations set forth in Paragraphs 1-10 of the Counterclaim herein.

12.    The '787 patent is invalid.

13.    An actual justifiable case or controversy exists because Counterdefendants have filed a complaint that asserts that Melange has infringed the '787 Patent.

## COUNT III: PATENT MISUSE
### (Against FortuNet and Millennium)

14.    Melange incorporates by reference the allegations set forth in Paragraphs 1-13 of the Counterclaim herein.

15.    Counterdefendants' complaint is objectively baseless and constitutes a strike suit.

16.    Counterdefendants have impermissibly attempted to broaden the physical scope of the patent grant with anticompetitive effect.

17.    The '787 Patent is unenforceable by Counterdefendants because of their patent misuse.

## COUNT IV: DEFAMATION/TRADELIBEL/PRODUCT DISPARAGEMENT

18.    Melange incorporates by reference the allegations set forth in Paragraphs 1-17 of the Counterclaim herein.

16

19.     Melange is informed and believes that Counterdefendants have made defamatory representations to customers and potential customers that Melange's device(s) infringe the '787 Patent and is an illegal game.

20.     The defamatory representations constitute slander per se.

21.     The defamatory representations are false.

22.     The defamatory statements were made willfully, intentionally and maliciously.

## COUNT V: UNFAIR COMPETITION

23.     Melange incorporates by reference the allegations set forth in Paragraphs 1-22 of the Counterclaim herein.

24.     Melange is informed and believes that FortuNet falsely represented to the public that its device(s) infringe the '787 Patent and is an illegal game.

25.     Melange is informed and believes that FortuNet falsely represented to the public that its progressive bingo game as herein described is patented, in violation of 35 U.S.C. § 292.

26.     FortuNet's actions as alleged herein constitute unfair competition under Nevada common law, a deceptive trade practice under Chapter 598 of the Nevada Revised Statutes, and/or false marking under 35 U.S.C. § 292.

27.     FortuNet's acts of unfairly competing with Melange have caused it damaged.

## RESERVED

Melange reserves the right to amend to join other Counterclaims as may be necessary and appropriate.

WHEREFORE, Melange respectfully requests that:

     a.    The Court adjudge, declare, and decree that U.S. Patent No. 4,856,787 is not infringed by Melange;

17

b.   The Court adjudge, declare, and decree that U.S. Patent No. 4,856,787 is invalid;

c.   The Court adjudge, declare, and decree that U.S. Patent No 4,856,787 is enforceable by reason of patent misuse:

d.   Melange recover its damages sustained as a result of FortuNet's infringement of Melange's patents, pursuant to 35 U.S.C. § 284;

e.   Melange's damages be trebled pursuant to 35 U.S.C. § 284;

f    Melange recover its reasonable costs, expenses and attorneys' fees pursuant to 35 U.S.C. § 285 and/or otherwise;

g.   FortuNet and its agents, servants, officers, directors, employees, joint venturers and all other persons acting in concert with it, directly or indirectly, be enjoined from infringing, inducing others to infringe, or contributing to the infringement of Melange's patents;

h.   The Court adjudge that FortuNet has falsely represented to the public that Melange's devices are infringing and/or illegal games;

i.   The Court adjudge that FortuNet has falsely represented to the public that its progressive bingo game is patented;

j.   FortuNet be ordered to pay treble damages resulting from unfair trade practices pursuant to N.R.S. Chapter 598A.210;

k.   FortuNet be fined pursuant to 35 U.S.C. § 292 for its false marking of its progressive bingo game as patented;

l.   FortuNet and its agents, servants, officers, directors, employees, joint venturers and all other persons acting in concert with it, directly or indirectly, be enjoined from any representation that Melange's devices are infringing and/or an illegal games;

m.   FortuNet and its agents, servants, officers, directors, employees, joint venturers and all other persons acting in concert with it, directly or indirectly, be enjoined from any further representation that FortuNet's progressive bingo game is patented; and

18

n.   Melange be granted such other further relief to which it may be entitled.

*Respectfully submitted,*

LAW OFFICES OF JOHN R. BAILEY

October 15, 2004

By: _____

John R. Bailey
City Center West – Suite 108
7201 West Lake Mead Blvd.
Las Vegas, Nevada 89128
(702) 562-8820

and

Mark R. Fox
FRASER TREBILCOCK DAVIS & DUNLAP, P.C.
1000 Michigan National Tower
Lansing, Michigan 48933
(517) 482-5800

Attorneys for Melange Computer Services, Inc.

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2004, a copy of the foregoing document was served by depositing a true and correct copy in the U.S. Mails, first class postage prepaid, and addressed to the following at their last known addresses.

David Comarow, Esq.
FortuNet, Inc.
2620 S. Highland Drive
Las Vegas, NV 89109

Attorney for Plaintiffs/Counterdefendants
FortuNet, Inc. and Millenium, Inc.

Jeffrey Weiss, Esq.
Karen Sepura, Esq.
Weiss, Moy & Harris, P.C.
4204 N. Brown Avenue
Scottsdale, AZ 85251-3914

Kirby R. Wells, Esq.
Kirby R. Wells & Associates
6900 Westcliff Drive, Suite 710
Las Vegas, NV 89145

Attorneys for Defendant/Counterclaimant
Planet Bingo, LLC

Alice O'Hearn
An Employee of Law Offices of John R. Bailey, P.C.

20

**EXHIBIT 2**

1   **DAVID COMAROW, ESQ.**
    Nevada Bar No. 004571
2   FortuNet, Inc.
    2620 S. Highland Dr.
3   Las Vegas, NV 89109
    (702) 796-9090 ext. 2011
4   Fax: (702) 446-5426
5   Attorney for Plaintiffs

6

7                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
8
    FORTUNET, INC.,                          Case Number: CV-S-04-0556-RCJ-RJJ
9              a Nevada corporation,
10  and

11  MILLENNIUM, INC.,                        **[PROPOSED] THIRD AMENDED**
               a Nevada corporation,         **COMPLAINT**
12
13            Plaintiffs,
                                             **PATENT INFRINGEMENT;**
14  v.                                       **UNFAIR COMPETITION;**
                                             **DECLARATORY RELIEF**
15  MELANGE COMPUTER SERVICES, Inc.,
               a Michigan corporation,
16
17  and

18  PLANET BINGO, LLC,                       **(JURY DEMAND)**
               a California limited liability company,
19                                           The Courtroom of the Honorable
               Defendants.                   Robert Clive Jones
20

21      FortuNet, Inc. ("FortuNet") and Millennium Inc. ("Millennium"), allege as follows:

22
23                      <u>**JURISDICTION AND VENUE**</u>

24      1.   Plaintiff FortuNet is a Nevada corporation with its principal place of business in Las

25  Vegas, Nevada.

26      2.   Plaintiff Millennium is a Nevada corporation with its principal place of business in Las

27  Vegas, Nevada.

28      3.   Plaintiff Millennium is a wholly-owned subsidiary of Plaintiff FortuNet.

    d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3.1.doc
    06/18/04 4:24 PM

EXHIBIT
2-




4.  At all times relevant, Plaintiff Millennium was and is a distributor of Plaintiff FortuNet's products.

5.  Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege Defendant Melange Computer Services ("MELANGE") is a Michigan corporation.

6.  Defendant Melange employs at least two employees in Henderson, Nevada.

7.  Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege Defendant Planet Bingo LLC. ("PLANET") is a California limited liability company.

8.  Planet is a plaintiff in an action currently pending before this court, case number CV-S-01-1295-PMP-PAL.

9.  Planet currently regularly does business in the State of Nevada with the licensor of its patents, Mr. Gary Weingardt.

10. Planet has done business with at least three Nevada casinos.

11. Plaintiff FortuNet's United States patent infringement claims arise under 35 U.S.C. § 271 et seq. This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400.

13. This Court has, and should assume, pendent jurisdiction of Plaintiffs' non-federal claims pursuant to § 1338(b) of Title 28 of the United States Code.

14. Jurisdiction over Defendants Melange and Planet comports with the United States Constitution and the long-arm jurisdiction statute for the State of Nevada in that  Defendants Melange and Planet have committed and actively induced acts of patent infringement with resultant damages in this judicial district as alleged in the Complaint, the infringing devices are at

FortuNet  & Millennium's Third Amended Complaint                    2

d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3.1.doc
06/18/04 4:24 PM

 

1    least offered for sale in this judicial district, and Defendants Melange and Planet have

2    purposefully availed themselves of the laws of the State of Nevada.

3        15. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege

4    Defendant Melange is owner by assignment of United States Patents 6,079,711, 6,398,646 and

5    6,656,045 (the "Melange Patents").

6

7        16. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that

8    Defendant Melange has publicly charged FortuNet and Millennium with committing acts of

9    infringement of the Melange Patents.

10        17. Defendant Melange has directly charged Plaintiff Millennium with acts of infringement

11        18. Plaintiffs FortuNet and Millennium have denied such infringement.

12        19. An actual and justiciable controversy has arisen and now exists by and between

13    Defendant Melange and Plaintiffs Fortunet and Millennium concerning whether FortuNet

14    infringes any of the Melange Patents.

15

16        20. A declaratory judgment is necessary in that Plaintiffs FortuNet and Millennium contend

17    and the Defendant Melange denies that none of the Plaintiffs' products infringes any valid claim

18    of any patent owned by Defendant Melange.

19                                    **GENERAL ALLEGATIONS**

20

21        21. Plaintiff FortuNet is, by lawful assignment, the sole owner of the entire rights, title and

22    interest in United States patent no. 4,856,787 ("the '787 Patent") and possesses all rights of

23    recovery under this patent.

24

25        22. Plaintiff FortuNet has complied with the marking/notice provisions of section 287 of the

26    Patent Act.

27

28    FortuNet & Millennium's Third Amended Complaint                    3

      d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3.1.doc
      06/18/04 4:24 PM

 

23. For many years, Plaintiff FortuNet has been involved in the development and manufacture of advanced electronic gaming devices.

24. Plaintiffs FortuNet and Millennium are commercially exploiting FortuNet's invention by manufacturing, selling and distributing electronic gaming devices.

25. Plaintiff FortuNet holds unrestricted gaming licenses as Manufacturer of Gaming Devices, Distributor of Gaming Devices and Operator of Inter-Casino Linked Systems, issued by the Nevada Gaming Commission.

26. Plaintiff Fortunet has obtained several important patents in the field of electronic gaming devices, including the '787 Patent.

27. Plaintiff FortuNet has invested millions of dollars developing its technology based upon its intellectual property, including the '787 Patent.

28. The '787 Patent was issued August 15, 1989 and covers the playing of concurrent games on a gaming network.

29. The '787 Patent will expire August 15, 2006.

30. The '787 Patent has been reexamined during prior litigation against Stuart Entertainment Inc., and the United States Patent and Trademark Office upheld the validity of the patent, issuing a "Reexamination Certificate . . . under 35 U.S.C. 307." See Exhibit "A" (last page).

## FIRST CLAIM FOR RELIEF

### (Infringement of the '787 Patent Against Melange)

31. Plaintiffs FortuNet repeats, realleges and incorporates by reference paragraphs 1-30 of this Complaint as if set forth herein verbatim.

 

32. Defendant Melange has manufactured and offered for sale a gaming device known as Max Pak which is advertised as playing bingo and other games concurrently: "Max Pak allows bingo players to play a variety of class II and class III credit-based extra games before, after and DURING session bingo. Yes, Max Pak allows players to play additional Super Games right from their units while playing session bingo. . . ." Exhibit "B" [Emphasis in original]. "During your off-session downtime, or even during the bingo session, your players have the choice of playing various credit-based games such as Max Cash bingo, Island Dreams, or electronic pull tabs." *Id.*

33. The Max Pak device is a network of gaming devices having at least one master game device and at least one slave game device.

34. Defendant Melange's Max Pak device allows players to play on a slave device a game called "VIPik'em" (also known as "Do-it-Yourself Bingo") concurrently with other games. Exhibit "C."

35. VIPik'em is a separate and distinct game, with different random factors and different rules than other games played concurrently therewith.

36. Plaintiff FortuNet is informed and believes, and thereupon alleges that the Max Pak device allows players to play on a slave device a game known as "Bonanza Bingo" concurrently with other games.

37. Bonanza Bingo is a separate and distinct game, with different random factors and different rules than other games played concurrently therewith.

38. Bonanza Bingo rules require bingo numbers be drawn concurrently with the progress of a series of other bingo games using a different set of bingo balls, either physical or electronic.

39. Bonanza Bingo uses a different set of random factors.



40. Bonanza Bingo has different rules than the other games of bingo played during the same session, including, without limitation, different patterns, when a player can buy cards, and when a winner is announced.

41. Plaintiff FortuNet is informed and believes, and thereupon alleges that the Max Pak device is designed and manufactured to optionally permit concurrent play of at least two of the following games: Session Bingo, Do-it-Yourself Bingo, Bonanza Bingo, Pull-tabs, Poker, Blackjack, Keno and Slots.

42. The games played on player devices are at least partly responsive to the master device portion of the Max Pak device network.

43. Plaintiff FortuNet is informed and believes, and thereupon alleges that Defendant Melange demonstrated and offered for sale the Max Pak device in Las Vegas, Nevada on or about March 9 – 11, 2004 at the Bingo World Gaming Conference.

44. As a result of the above-acts, as well as others, Defendant Melange has infringed, actively induced and/or contributed to the infringement of the '787 Patent by, among other acts, making, using, offering for sale, selling, or causing to be sold, in this judicial district and elsewhere in the United States, electronic gaming devices that embody the invention of the '787 Patent and/or a component embodying a material part of said device without license or authority from Plaintiff FortuNet. Melange will continue such acts unless enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Infringement of the '787 Patent Against Planet Bingo)

45. Plaintiffs FortuNet and Millennium repeat, reallege and incorporate by reference paragraphs 1-30 of this Complaint as if set forth herein verbatim.

46. Defendant Planet manufactures, offers for sale and sells a network device (the "Planet Device") which allows at least two separate and distinct games, having different rules and different random factors to be played concurrently.

47. Defendant Planet offered for sale and demonstrated the Planet Device in Las Vegas, Nevada on or about March 9 – 11, 2004 at the Bingo World Gaming Conference.

48. Defendant Planet has sold and/or leased the Planet Device in several states and has transported the Planet Device across state lines.

49. The Planet Device is a network of gaming devices having at least one master game device and at least one slave game device.

50. In the Planet Device network, the games played on player devices are at least partly responsive to a master device.

51. The Planet Device uses a random number generator to randomly assign colors to a flashboard, then a different random number generator or ball blower to designate sequential bingo numbers.

52. A player of the Planet Device must participate in the bingo portion, but need not pay extra to play in the color portion.

53. If a player of the Planet Device who has paid to participate in the color portion wins in the bingo game and also has a line of five of the same colors of numbers (as determined by a random number generator separate and apart from that choosing called bingo ball numbers) on his or her game card representation, he or she wins a separate and distinct prize for the line of colored boxes.

//

//

 

54. If a player of the Planet Device has not paid for the color game, he or she may win a prize for winning the conventional bingo game, but can win nothing for the concurrent color line game (hereinafter, the "Color Line Game").

55. The Planet Device color line game is a separate and distinct game with its own rules of play and unique random factors.

56. The Planet Device color line game is a separate and distinct slot game because (1) a player must pay separately to play the game, (2) it uses a random number generator to assign colors to segments of a display, (3) a winner is declared when a line of the same indicium is seen in the display, (4) there need not be a winner of every game played and (5) there may be multiple winners for each game, not just the winners who are "first to cover."

57. The Planet Device color line game is a separate and distinct Keno game because (1) it is a predetermined length sequence of numbers designated out of a predetermined number of available numbers, (2) a player must match a designated combination of Keno hits on his or her game card, (3) there need not be a winner for each game; and (4) there may be multiple winners for each game, not just the winners who are "first to cover."

58. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that the Planet Device network game device is designed and manufactured, and is used to play "Bonanza Bingo."

59. Bonanza Bingo is a separate and distinct game of bingo than other games in a bingo session.

60. Bonanza Bingo rules require bingo numbers be drawn during the progress of a series of other bingo games using a different set of bingo balls, either physical or electronic.

FortuNet & Millennium's Third Amended Complaint                8

d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3 1 doc
06/18/04 4:24 PM

 

61. Bonanza Bingo uses a different set of random factors which are unique to the Bonanza Bingo game.

62. Bonanza Bingo has different rules than the other games of bingo played during the same session, including, without limitation, different patterns, the time intervals when a player can buy cards, and when a winner is announced.

63. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that the Defendant Planet Bingo Device allows players to play on a slave device a game known as "Do-it-Yourself Bingo" concurrently with other games.

64. Do-it-Yourself Bingo is a separate and distinct game, with unique random factors and different rules than other bingo games played concurrently therewith.

65. As a result of the above acts, as well as others, Defendant Planet has infringed, actively induced and/or contributed to the infringement of the '787 Patent by, among other acts, making, using, offering for sale, selling, or causing to be sold, in this judicial district and elsewhere in the United States, electronic gaming devices that embody the invention of the '787 Patent and/or a component embodying a material part of said device without license or authority from Plaintiff FortuNet. Planet will continue such acts unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF

(Unfair Competition Against Planet Bingo)

(NRS Chapter 598)

66. Plaintiffs FortuNet and Millennium repeat, reallege and incorporate by reference paragraphs 1-65 of this Complaint as if set forth herein verbatim.

67. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that Defendant Planet has publicly stated that the Planet Device is a "Class II" bingo device as

1  defined by the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §2701 et seq. and the National

2  Indian Gaming Division.

3      68. The Color Line Game implemented with a server computer incorporating an RNG to

4  colorize the flashboard is, in fact, a "Gambling Device" as defined by NRS 463.0155 (Exhibit

5
6  "D").

7      69. The Planet Device, by virtue of playing the Color Line Game using an RNG separate and

8  distinct from a bingo game, not requiring a winner every game, and not designating the first

9  player to cover a predetermined combination or pattern to be a winner, is a "Class III" device

10  under the Gaming Regulatory Act of 1988, 25 U.S.C. §2701 et seq.

11      70.  Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that

12  Defendant Planet falsely publicly represented that the Planet Device as being a legal gaming

13
14  device in jurisdictions prohibiting Class III games.

15      71. The Planet Device is a Class III device, and is illegal in several jurisdictions in which it is

16  sold, leased and used.

17      72. The Planet Device is a "Gambling Device" as defined in the Johnson Act, 15 U.S.C.

18  § 1171.

19      73. Planet has transported the Planet Device across state boundaries in violation of the

20
21  Johnson Act,  15 U.S.C. §1172.

22      74. Defendant Planet's acts of falsely advertising the Planet Device is a Class II device

23  constitutes unfair competition under Nevada common law and a deceptive trade practice under

24  N.R.S. Chapter 598.

25  //

26  //
27

28
FortuNet  & Millennium's Third Amended Complaint          10

d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3 1.doc
06/18/04 4:24 PM

 

75. Defendant Planet's acts of unfairly competing with Plaintiffs FortuNet and Millennium by deceiving the public has damaged Plaintiffs FortuNet and Millennium by, among other things, reducing sales and depressing the market price of its products.

76. Defendant Planet's acts of competing with Plaintiffs FortuNet and Millennium by deceiving the public constitutes unfair competition under Nevada common law and a deceptive trade practice under N.R.S. Chapter 598 (Exhibit "E").

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

77. Plaintiffs FortuNet and Millennium repeat, reallege and incorporate by reference paragraphs 1-44 of this Complaint as if set forth herein verbatim.

78. Defendant Melange has publicly stated that it has sent a letter to FortuNet and Millennium accusing them of infringing the Melange Patents.

79. Defendant Melange has publicly stated that it could sue FortuNet and Millennium for infringing the Melange Patents.

80. Specifically, on or about May 10, 2004, FortuNet learned from one of its distributors that a principal of Defendant Melange told one of the distributor's clients, a manager of a Native American bingo hall, that Melange sent Plaintiff Millennium a letter accusing FortuNet and Millennium of infringing its "VIPick'em patent" and stated that Melange "could sue FortuNet for patent infringement."

81. Plaintiffs FortuNet and Millennium are informed and believe, and there upon allege that Defendant Melange is owner by assignment of U.S. patent numbers 6,656,045 (Exhibit "F"), 6,398,646 (Exhibit "G") and 6,079,711 (Exhibit "H") (the "Melange Patents").

 

82. U.S. patents numbers 6,656,045 and 6,398,646 both relate to an invention wherein a player can store his or her favorite electronic do-it-yourself bingo cards for repetitive use from one session of bingo to another.

83. VIPick'em" is a "do-it-yourself" bingo game marketed by Defendant Melange.

84. Plaintiffs Fortunet and Millennium manufacture and distribute devices that are used to play "do-it-yourself" bingo games.

85. U.S. patent NO. 6,079,711 (the '711 Patent) claims a combination bingo and poker game.

86. Plaintiff FortuNet has offered combination bingo-poker games in the past.

87. Plaintiffs FortuNet and Millennium have compared the claims of the Melange Patents with all of FortuNet's products and has concluded no properly interpreted, valid and enforceable claim of the Melange Patents reads on any device manufactured, used, offered for sale, sold or imported by Plaintiff FortuNet or Millennium, currently or in the past.

88. Plaintiffs FortuNet and Millennium deny any infringement of any of the Melange Patents.

89. None of FortuNet's or Millennium's products permit a player to store do-it-yourself bingo cards for repetitive use in multiple bingo sessions.

90. None of FortuNet's or Millennium's current products enable the play of the combination bingo-poker game described in the '711 patent.

91. Plaintiffs FortuNet and Millennium are informed and believe and thereupon allege the '711 patent is invalid or unenforceable under the Title 35 of the United States Code.

92. An actual and justiciable controversy has arisen and now exists by and between Defendant Melange and Plaintiffs Fortunet and Millennium concerning whether FortuNet or Millennium infringes any of Melange's patents.

 

93. A declaratory judgment is necessary in that Plaintiffs FortuNet and Millennium contend and the Defendant Melange denies that none of Plaintiffs' products infringes any valid claim of any patent owned by Defendant Melange.

94. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that each of the Melange Patents are invalid for failure to comply with the requirements of Part II of Title 35.

95. Plaintiffs FortuNet and Millennium are informed and believe, and thereupon allege that each of the Melange Patents is unenforceable due to Defendant Melange's fraud and inequitable conduct in procuring each patent.

96. Plaintiffs FortuNet and Millennium have not directly infringed or induced the infringement of, nor been a contributory infringer of any of the Melange Patents.

### PRAYER

WHEREFORE, Plaintiffs FortuNet and Millennium pray for relief and judgment as follows:

#### First Claim for Relief

1. That Defendant Melange be adjudged to have infringed, actively induced the infringement of, and contributed to the infringement of the '787 Patent, and to have done so knowingly, willfully and deliberately;

2. That Defendant Melange and their respective officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, be preliminarily and permanently enjoined from any further infringement, further inducing the infringement and/or further contributing to the infringement of the '787 Patent;

**Second Claim for Relief**

3. That Defendant Planet be adjudged to have infringed, actively induced the infringement of, and contributed to the infringement of the '787 Patent, and to have done so knowingly, willfully and deliberately;

4. That Defendant Planet and its respective officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, be preliminarily and permanently enjoined from any further infringement, further inducing the infringement and/or further contributing to the infringement of the '787 Patent;

**Third Claim for Relief**

5. That the Court adjudge that Defendant Planet has falsely represented to the public that its products are Class II devices (and are not Class III gaming devices) as defined by the Gaming Regulatory Act of 1988, 25 U.S.C. §2701 et seq. and the National Indian Gaming Division;

6. That the Court adjudge that the Planet falsely represented to the public that the Planet Device is not "Gambing Device" according to NRS 463.0155;

7. That the Court adjudge that Defendant Planet has falsely represented to the public that its products are legal in one or more jurisdictions prohibiting Class III devices;

8. That the Court adjudge that Defendant Planet has falsely represented to the public and government officials that transportation of its products across state boundaries does not violate the Johnson Act, 15 U.S.C. § 1171;

9. That Defendant Planet be ordered to pay treble damages resulting from unfair trade practices pursuant to N.R.S. 598A.210.

10. That Defendant Planet and its respective officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, be preliminarily and



1  permanently enjoined from any further representation that the Planet Device is a Class II (and not

2  a Class III) device as defined under the Gaming Regulatory Act of 1988, 25 U.S.C. §2701 et seq.;

3  ### Fourth Claim for Relief

4  11. That the Court adjudge that no product FortuNet or Millennium makes, uses, offers for

5  sale, sells or imports infringes any valid and enforceable claim of U.S. Patent nos. 6,079,711.

6  7  6,398,646 or 6,656,045;

8  12. That the Court adjudge that U.S. patent no. 6,079,711 is invalid;

9  13. That the Court adjudge that U.S. patent no. 6,398,646 is invalid;

10  14. That the Court adjudge that U.S. patent no. 6,656,045 is invalid;

11  15. That the Court adjudge that U.S. patent no. 6,079,711 is unenforceable;

12  16. , That the Court adjudge that U.S. patent no. 6,398,646 is unenforceable;

13  14  17. That the Court adjudge that U.S. patent no. 6,656,045 is unenforceable;

15  ### All Causes of Action

16  18. For actual damages from each defendant, according to proof;

17  19. For enhanced damages from each defendant up to and including treble damages, pursuant

18  to 35 U.S.C. § 284;

19  20. For attorneys' fees from each defendant pursuant to 35 U.S.C. § 285 or as otherwise

20  21  permitted by law;

22  //

23  //

24  //

28  FortuNet & Millennium's Third Amended Complaint          15
d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3.1.doc
06/18/04 4:24 PM



1

2    21. For costs, and such other and further relief as the Court deems just and proper.

3    RESPECTFULLY SUBMITTED this 21ᵗ day of June, 2004.

4

5

6                                    DAVID COMAROW, ESQ.

7                                    Nevada Bar No. 004571

8                                    Attorney for Plaintiff
                                     FortuNet, Inc.

9

10                    **DEMAND FOR JURY TRIAL**

11   FortuNet, Inc. hereby demands a jury trial as to all issues that are triable.

12   RESPECTFULLY SUBMITTED this 21ᵗ day of July 2004.

13

14

15

16                                   DAVID COMAROW, ESQ.

17                                   Nevada Bar No. 004571
                                     Attorney for Plaintiff
18                                   FortuNet, Inc.

19

20

21

22

23

24

25

26

27

28
     FortuNet & Millennium's Third Amended Complaint          16

     d:\legal\litigation\planet & melange\pleadings\3rd am cpt v3.1.doc
     06/18/04 4:24 PM

Max Pak is the next generation in electronic session bingo. Max Pak plays just like paper by displaying the pack cards border, color and layout (3-on, 6-on, etc.). Max Pak has electronic session bingo features such as changeable daubers, flashboard, daub/autodaub, picture-in-picture television option, on-screen validation, and more!



**EXTRA GAMES ·** What does Max Pak have that others do not? Max Pak allows bingo players to play a variety of class II and class III credit-based extra games before, after, and DURING session bingo. Yes, Max Pak allows players to play additional Super Games right from their units while playing session bingo - directly adding to your bottom line!

**EASY SETUP & CONFIGURATION ·** The Max Pak System integrates seamlessly with The EPIC System, the best and most comprehensive bingo hall management system available today. Pattern and card setup, card purchase information, and reporting are all handled in one easy-to-manage system. The software is set up in a simple user interface allowing the hall to change electronic packages and games with ease.

With full integration into EPIC your hall will receive comprehensive reporting and players club promotion capabilities, including the ability to offer your players our patented VIPick'ems. The VIPick'em option allows your players to save their favorite sets of pick numbers along with their player demographics. These sets of pick numbers can be recalled at point of sale and downloaded right into their Max Pak units or printed on a paper card.

**HARDWARE ·** The Max Pak System utilizes advanced technology to provide a high-speed, highly reliable, yet easy to operate, gaming network. Player stations include cutting edge computer technology including wireless connectivity, wake-on-lan, and touchscreen monitors. The Max Pak server is the heart of the gaming network. It is built on an enterprise platform utilizing Windows 2000 and SQL technology.

Exhibit B

*MELANGE*

**please visit us on the web at**
**800.572.1497 · P 517.321.8437 · F 517.321.8435**

 

During your off-session downtime, or even during the bingo session, your players have the choice of playing various credit-based games such as Max Cash bingo, Island Dreams, or electronic pull tabs. Implementation of these extra games generates revenue and gives your players more opportunities to win cash prizes. Both Max Pak and Super Games offer configurable options to suit your specific needs and requirements.



**ISLAND DREAMS** — Island Dreams gives players more bingo with spinning reel action. Bingo balls are called and a bingo card is daubed while the reels spin. The reels stop to reflect the results of the bingo game and prize payout table. Island Dreams also offers the fun and excitement of a bonus round.

**MAX CASH** — Another fun variation of bingo! This game starts with three reels spinning to select a single, double, or triple bingo pattern to be played. Max Cash calls and daubs automatically. The first player to bingo on the selected pattern wins the designated prize amount, and the winning card is displayed on all stations.

**MAX SPEED** — Lightning-style bingo delivers fast fun! Players select three-number face bingo cards and play against other Max Speed players. This computerized pari-mutuel game delivers lightning-fast payouts right into the players' credits.

**ELECTRONIC PULL TABS** — All of our electronic pull tabs display the payout table and a table with the number of winners at each level. Each play reveals the tab window's content. If the player matches a winning combination, the credits won are added to the credit balance.

**POKER** — We have several varieties of poker to choose from, including Draw Poker, Bonus Draw Poker, Double Bonus Draw Poker, and Progressive Double Bonus Draw Poker. Players can pick the style of poker and the denomination that they prefer.

**KENO** — Players can select up to 10 numbers. As each number is selected the pay table is updated. As the 20 numbers are called, ball hits are displayed on the screen. Credits won are updated instantly.

**MELANGE**

please visit us on the web at
800.572.1497 · P 517.321.8437 · F 517.321.8435

# EXHIBIT 3

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF ___DELAWARE___

FORTUNET, INC., a Nevada corporation and
MILLENNIUM GAMES, INC., a Nevada corporation,
V.        Plaintiffs,

MELANGE COMPUTER SERVICES, INC. a Michigan
corporation, and PLANET BINGO, LLC., a
California limited liability company,
        Defendants.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV-S-04-1448-PMP-(PAL)
        District of Nevada

TO: BK ENTERTAINMENT, INC. a Delaware Corporation
    301 Louth Street
    St. Catherines
    Ontario Canada L2S 3V6

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects): See Attachment A

| PLACE Wilcox & Fetzer<br>1330 King Street<br>Wilmington, DE 19801 | DATE AND TIME<br>January 13, 2006 5:00pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiffs | December 29, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Michael D Rounds
WATSON ROUNDS
5371 Kietzke Lane
Reno NV 89511 (775) 324-4100

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT
3

## ATTACHMENT A

1.    Any and all agreements with Melange Computer Services, Inc. from 1997 through the present.

2.    Any and all agreements with bingo halls that refer to Melange Computer Services, Inc. and any electronic bingo player unit offered for sale by BK Entertainment.

3.    Representative accounting records showing any revenue received by BK Entertainment under any of the agreements set forth in paragraphs 1 or 2.

# EXHIBIT 4

Westlaw.

Not Reported in F Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1967023 (S D N Y )
(Cite as: 2002 WL 1967023 (S.D.N.Y.))

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court, S D. New York
Andrew TOTTENHAM, Plaintiff,
v.
TRANS WORLD GAMING CORPORATION,
a/k/a: Trans World Corporation, Defendant
No. 00 Civ. 7697(WK).

June 21, 2002

Former chief executive officer (CEO) sued corporation, alleging wrongful termination Corporation counterclaimed for unjust enrichment, conversion, and breach of fiduciary duties. Corporation moved for discovery order requiring production of former CEO's expenses for four and one=half year period. The District Court, Knapp, Senior District Judge, held that lack of evidence of defalcations on part of former CEO precluded discovery request, other than discovery relating to two instances of alleged private use of corporate funds.

Order accordingly.

West Headnotes

**Federal Civil Procedure** ☞1588
170Ak1588 Most Cited Cases
Evidence that former chief executive officer used corporation's funds to purchase one share of stock in another corporation, without authorization, and to pay insurance premium on wife's automobile, was insufficient support for discovery request of all records of expenses paid by former officer for period of four and one half years, to determine if defalcation of corporate funds took place. Fed. Rules Civ. Proc., Rule 26(b)(1).
David M. Fish, Rosen, Leff, Hempstead, NY, for Plaintiff.

Daniel P. Goldberg, White & Case, LLP, New York, NY, for Defendant.

*ORDER*

KNAPP, Senior J.

**\*1** In 1996, Defendant Trans World Gaming Corporation (hereinafter the "Defendant" or "TWG") hired Plaintiff Andrew Tottenham (hereinafter the "Plaintiff" or "Tottenham") as its President and Chief Executive Officer ("CEO"). On June 16, 2000, the Defendant terminated the Plaintiff and, consequently, he initiated these legal proceedings against the company. In responding to the Plaintiff's Second Amended Complaint, the Defendant asserted counterclaims against the Plaintiff for unjust enrichment, conversion, and the breach of fiduciary duties. The latter claim was premised on the Plaintiff's conduct while he was employed as the Defendant's President and CEO. During that time period, TWG contends that the Plaintiff used TWG's funds to purchase one share of stock in another company for his own personal benefit without the authorization or knowledge of TWG's board of directors. The Defendant further alleges that the Plaintiff also used its funds to pay for his own personal expenses, such as his wife's automobile insurance

The Defendant now asserts that "if Tottenham used company money to pay for his personal insurance needs, he may well have used company money to pay other personal expenses." June 17, 2002 Daniel P. Goldberg Letter at 2 (hereinafter the "Goldberg Letter"). Since TWG contends that "[t]he only way TWG can make this determination is to obtain discovery from Tottenham," it propounded requests for the following documents: (a) "[a]ll documents concerning any expense or obligation paid by or on behalf of Tottenham or Tottenham's wife from January 1, 1996 up to and including June 16, 2000, including documents sufficient to show the source of funds used to pay such expenses or obligations;" and (b) "[a]ll documents concerning Tottenham's finances from January 1, 1996 up to and including June 16, 2000, including tax returns for tax years 1996 through 2000, inclusive, financial statements, checkbooks, bankbooks, bank statements, and investment account statements." Goldberg Letter at 2. The Plaintiff, however, refuses to produce such documents on the grounds that the Defendant "has not offered a scintilla of proof that 'Tottenham defalcated TWG's funds by using company money to pay personal expenses." June 17, 2002 David M.


EXHIBIT
4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1967023 (S.D.N.Y.)
**(Cite as: 2002 WL 1967023 (S.D.N.Y.))**

Page 2

Fish Letter at 1 (hereinafter the "Fish Letter"). Since the parties were unable to resolve this discovery dispute, the Defendant has asked this Court to direct the Plaintiff to produce the foregoing documents.

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party..." Fed.R.Civ.P. 26(b)(1). In accordance with this generous standard, a party may obtain discovery regarding any matter that is relevant to the parties' claims if it appears reasonably calculated to lead to the discovery of admissible evidence. See Fed.R.Civ.P. 26(b)(1). See also Weber v. Multimedia Entertainment, Inc. (S.D.N.Y, Nov.24, 1997) 1997 WL 729039, *1.

*2 "Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Cleveland-Goins v. City of New York (S.D.N.Y. Aug.30, 1999) 1999 WL 673343, *2. At a conference addressing this discovery dispute conducted via telephone on June 19, 2002, this Court inquired as to the support underlying the Defendant's allegations. The Defendant's counsel informed us that the Defendant's own records indicated that the Plaintiff had used company funds to pay for his wife's automobile insurance. June 19, 2002 Tr. at 2-3. In addition, both parties agreed that the Plaintiff used the Defendant's funds to purchase a share of stock in another company (although the Plaintiff contends that he was entitled to that share). Id. However, the Defendant provided no further information which would support that the Plaintiff purportedly misused company funds on other specific occasions.

Discovery requests cannot be based on pure speculation or conjecture. Surles v. Air France (S.D.N.Y. July 19, 2001) 2001 WL 815522, *4. Here, although the Answer contains allegations with respect to specific instances of defalcation (namely the Plaintiff's alleged misuse of company funds to purchase stock and to pay for his wife's automobile insurance), the Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged in the Answer. We will not condone such a fishing expedition on the mere speculation that the Plaintiff "may well have used company money to pay other personal expenses," see Goldberg Letter at 2, where the Defendant has not offered any objective support for that contention. See United States v. Consolidated Edison Co. of New

York (E.D.N.Y. Dec.15, 1988) 1988 WL 138275, *1-*2 (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint).

Since the Defendant indicated that there is objective support for its allegation that the Plaintiff breached his fiduciary duties by using the company's money to pay for his wife's automobile insurance and to purchase a share of stock in another company, the Defendant may propound document requests which seek information relating to these allegations. However, for the aforementioned reasons, we will not grant the Defendant's broad request for all documents "concerning any expense or obligation paid by or on behalf of Tottenham or Tottenham's wife from January 1, 1996 up to an including June 16, 2000," or for all documents "concerning Tottenham's finances from January 1, 1996 up to and including June 16, 2000." If the Defendant acquires some modicum of objective support (for example, by relying as it already has on company records) for its contention that the Plaintiff may have used company funds to pay personal expenses on other occasions, then the Defendant may also propound discovery requests for information related to those other specific instances of defalcation.

*3 SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 1967023 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv07697 (Docket) (Oct. 12, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 32002677 (D.Conn.)
**(Cite as: 2002 WL 32002677 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
GATEWAY BANK, Plaintiff
v.
GMG BROKERAGE SERVICES, INC., and George
M. Galgano, Defendants
**No. 5:90-CV-532(EBB).**

Dec. 18, 2002.

*RULING ON MOTION TO VACATE OR MODIFY
JUDGMENT*

BURNS, Senior J.

### INTRODUCTION

**\*1** By Motion dated April 17, 2002, Defendants
GMG Brokerage Services, Inc. ("GMG") and
George M. Galgano ("Galgano") seek the
modification or vacatur of the judgment entered in
this matter on January 26, 1993. Defendants moved
pursuant to Federal Rules of Civil Procedure 60 and
62. The judgment in question was in the principal
amount of $10,147,176.30, with interest in the
amount of $1,231,106.80, from August 27, 1991 to
September 17, 1992. The judgment followed two and
one-half years of litigation. No appeal was taken
from the judgment.

Defendants move on the grounds that the judgment
has been satisfied and that the continued holding by
Plaintiff of 7,000 shares of Gateway Bank is
inequitable, in that the judgment continues to have a
disallowed prospective effect.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed
necessary to an understanding of the issues raised in,
and decision rendered on, this Motion.

On or about March 1, 1989, GMG entered into a
Mortgage Agreement with Gateway, whereby GMG
agreed to procure mortgages on behalf of Gateway.
Pursuant to the terms of the agreement, GMG was
obligated, at its own cost and expense, to provide
collection services for all delinquent loans and/or
repurchase or bring current any loan which had
become delinquent for more than 60 days. Pursuant

to the agreement, GMG began procuring mortgages
for Gateway. Subsequently, some of the loans went
into default.

Gateway commenced an action against GMG and
Galgano for breach of contract, fraud and RICO, by
filing a Verified Complaint, Motion for Temporary
Restraining Order, and Application for Preliminary
Injunction on or about October 22, 1990. Gateway
also moved for a disclosure of assets. This Court
signed both the Order to Show Cause for Preliminary
Injunction and the Temporary Restraining Order,
following two conference calls with Galgano. On
October 31, 1990 the Court granted a Motion for
Continuation of the Temporary Restraining Order.

The Verified Complaint was never answered.

From October through December, 1990, Gateway
was initially concerned with the issue of preserving
the loan files that were in the custody of Defendants.
After agreeing to produce the files, Defendants
produced only partially complete files. At the
deposition of GMG's former counsel on December
12, 1991, Gateway learned that there were various
documents missing from each of the produced loan
files. The documents were not ultimately produced
until September, 1991, a year later, following
successive Court orders imposing sanctions on
Galgano.

No counsel filed an appearance in the case until
August, 1991. Although two attorneys had attended
two depositions in December, 1990, neither filed an
appearance in the case. The third attorney took no
action in the face of many Court orders and motions
for default and default judgment.

Prior to prosecuting the merits of the action,
Gateway feared that Galgano might dissipate any
assets by which a judgment could be satisfied.
Because he fled to the Cayman Islands to avoid the
litigation, no discovery could be taken of him.
Finally, Gateway obtained a subpoena issued by the
Court pursuant to 28 U.S.C. Section 1783 and served
Galgano in the Cayman Islands. Galgano ignored the
subpoena.

**\*2** Upon Galgano's return to the United States,
Gateway again made various attempts to locate his
whereabouts in order to serve him with discovery and

EXHIBIT
5

subpoenas. Finally, upon Galgano's failure to appear at a deposition, this Court signed an Order of Contempt after Galgano next failed to attend a Court-ordered Order to Show Cause. Although Attorney Dominick Barbara appeared at the hearing to allegedly represent the interests of Galgano, he, too, failed to enter an appearance in the case.

In the meantime, despite Court orders requiring that all assets of Defendants be turned over to the Court appointed receiver, Galgano directed his son to forward them to him in the Cayman Islands. Galgano continued to marshal assets upon his return to this country, notwithstanding his knowledge of the Court order of March 28, 1991, enjoining Defendants from doing same.

After various hearings and motion practice and the filings of Orders To Show Cause, all ignored by Galgano, Galgano finally appeared by counsel in August, 1991. A default was entered by the Clerk on August 27, 1991. Upon the request of Galgano's fourth attorney, Dominick Porto, the Court suspended temporarily a March 28, 1991 Order of Contempt and Incarceration against Galgano until further order of the Court.

At a hearing before the Court on October 29, 1991, Porto advised the Court that he would no longer represent Defendants due to their failure to pay for his services. He was then owed $15,000. The Court gave him one week in which to file an opposition to the Motion for Default Judgment. Prior to his withdrawal, he filed a Cross-Motion to Set Aside the Default, which was granted.

Galgano continued to refuse discovery and to attend a deposition or court hearings. He did not hire another attorney to represent Defendants, nor did he appear pro se to represent himself. Accordingly, on February 4, 1992, Gateway moved for reconsideration. Galgano never responded to this Motion. The Motion was granted and the default was reinstated on August 11, 1992. A hearing on damages was held on September 15, 1992, at which time judgment in the above-referenced amount was entered. No one appeared to oppose Gateway's application. The judgment was never appealed.

Now, nine years later, Galgano moves to modify or vacate this judgment, on the grounds that it is inequitable for the judgment to continue to have prospective effect.

Galgano asserts that Gateway made approximately 163 mortgages "during the relevant time period", totaling $16,000,000. Galgano "assumes" that GMG processed these mortgages, although he has no verification of this. He further contends that, inasmuch as the majority of these loans have been satisfied, discharged, assigned or foreclosed, and still has assets finally turned over to the Court-appointed receiver, Gateway has earned more than enough money to satisfy this judgment. He seeks return of his stock, which he claims is worth $2,000,000.

*LEGAL ANALYSIS*

*3 Although Defendants move pursuant to Federal Rules of Civil Procedure Rules 60 and 62, the Court finds no applicability of Rule 62 to this action. Thus, its only analysis will be of Rule 60.

Rule 60(b) provides, in pertinent part, as follows:

> On motion and upon terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed, or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment. The motion shall be made within a reasonable time ...

Pursuant to Rule 60(b)(5), Defendants seek credit for the amounts collected by Plaintiff for the nearly $10,000,000 allegedly collected by Gateway for mortgages which they "assume" were processed by GMG. The difficulty with Defendants' claim is that none of these payments were made by them. In each case they cite, relief from a judgment was entered when the party against whom it was entered proved that payments had been made by them personally. In *Johnson Waste Materials v. Marshall*, 611 F.2d 593 (5th Cir.1980), records of payments made by defendants could not be located prior to the entry of judgment. A year later, the defendants moved for relief under Rule 60(b)(5) and produced copies of cancelled checks reflecting payment of a portion of the wages in question and the appellate court granted relief from the judgment to the extent of those payments. Similarly, in *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir.1955), the judgment debtor was afforded relief when he produced copies of money orders evidencing full payment of a tractor trailer loan. "The defendants are entitled to relief from the judgment only to the extent of their own payments." *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1091 (3rd Cir.1978) (judgment debtor credited for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32002677 (D.Conn.)
(Cite as: 2002 WL 32002677 (D.Conn.))

$7,500 personal payment on $35,000 judgment) (emphasis added). It is clear from this persuasive precedent that, inasmuch as Galgano is attempting to claim monies, the collection of which he had nothing to do with, his claim under Rule 60(b)(5) must be rejected

On October 23, 2002, this Court ordered briefing of the issues of "timeliness" of the Motion and "extraordinary circumstances", as mandated by the Second Circuit. *See PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.1983); *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977).

Galgano sets forth a chronology of the events of the underlying litigation completely at odds with the true facts and claims that his fanciful version constitutes "extraordinary circumstances." The only thing that is indeed extraordinary is his attempt to rewrite the true history of this litigation, as taken directly from this Court's files. Galgano's contempt for his adversary and this Court existed for the full two and one-half years of that litigation. He will find no relief from his conduct at this time.

*4 Too, he has offered no credible reason for the delay of nine years in the filing of this Motion. His assertion that he had nothing with which to defend the case nine years ago and suddenly he now does is unacceptable. Galgano flouted every order of this Court, treating it contemptuously for two and one-half years. He made absolutely no attempt to participate in the underlying litigation, even going so far as to flee to a foreign jurisdiction. For these reasons, it would be the antithesis of justice to modify, let alone vacate, this judgment.

### CONCLUSION

For all of the reasons set forth herein, Defendants Motion For An Order Pursuant to F.R.C.P. 60 and 62 to Vacate or Modify Judgment [Doc. No. 102] is hereby DENIED. The Clerk is directed to maintain this case as closed

Not Reported in F.Supp.2d, 2002 WL 32002677 (D.Conn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6



December 30, 2005

Michael Rounds
Watson Rounds
5371 Kietzke Lane
Reno, NV 89511

Dear Mr. Rounds:

We represent BK Entertainment, Inc. We have received a copy of your subpoena in the matter of Fortunet, Inc. v. Melange Computer Services, Inc., Case No. CV-S-04-1448-PMP-(PAL). The subpoena does not comply with Federal Rule of Civil Procedure 45 or 28 U.S.C. § 1783. Specifically, Rule 45(a) provides that, if separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the Court for the district in which the production or inspection is to be made. Moreover, Rule 45(b)(2) provides that a subpoena directed to a witness in a foreign country who is a national or resident of the United States shall issue under the circumstances and in the manner and be served as provided in 28 U.S.C. § 1783.

Because the subpoena is invalid under Federal Rule of Civil Procedure 45 and 28 U.S.C. § 1783, BK Entertainment objects to the subpoena and will not be producing the requested documents.

Very truly yours,

Gregory E. Karpenko

**Direct Dial:** 612.492.7064
**Email:** gkarpenko@fredlaw.com

GEK\kk\#3215374 – 44180.1000

cc:    Mark Fox, Esq.



Attorneys & Advisors      Fredrikson & Byron, P.A.
main  612.492.7000    200 South Sixth Street, Suite 4000
fax  612.492.7077     Minneapolis, Minnesota
www.fredlaw.com      55402-1425

MEMBER OF THE WORLD SERVICES GROUP    OFFICES
A Worldwide Network of Professional Service Providers    Minneapolis, London, & Monterrey, Mexico